Emily Croston (ISB No. 12389)
ecroston@acluidaho.org
Paul Southwick (ISB No. 12439)
psouthwick@acluidaho.org
ACLU OF IDAHO FOUNDATION
P.O. Box 1897
Boise, ID 83701
(208) 344-9750

Barbara Schwabauer*
bschwabauer@aclu.org
Eleanor Matheson*
ematheson@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street N.W.
Washington, DC 20005

Chase Strangio*
cstrangio@aclu.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

Samuel L. Linnet (ISB No. 9788)
sam@alturaslawgroup.com
ALTURAS LAW GROUP, PLLC
111 N 1st Avenue, Suite 2I, PO Box 2975
Hailey, ID 83333
(208) 788-6688

Peter C. Renn*
prenn@lambdalegal.org
Kell L. Olson*†
kolson@lambdalegal.org
Tara L. Borelli*†
tborelli@lambdalegal.org
Pelecanos*†
pelecanos@lambdalegal.org
A.D. Sean Lewis*
alewis@lambdalegal.org
Charlie Ferguson*†
cferguson@lambdalegal.org
LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.
800 South Figueroa St., Suite 1260
Los Angeles, CA 90017
†*mailing address only*
(213) 382-7600 (T) | (855) 535-2236 (F)

**Pro hac vice* admission forthcoming
*Attorneys for Plaintiffs (additional counsel identified on the following page)*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

EMILIE JACKSON-EDNEY, *et al.*,

*Plaintiffs*,

v.

RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*,

*Defendants*.

Case No. 1:26-cv-00261-AKB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DANIEL DOE AND PETER POE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM [DKT. 5]**

Katherine M. Forster*
katherine.forster@mto.com
Kyle A. Groves*
kyle.groves@mto.com
Jannet Gomez*
jannet.gomez@mto.com
MUNGER TOLLES & OLSON LLP
350 South Grand Ave., 50th Fl.
Los Angeles, CA 90071-3426
(213) 683-9100 (T) | (213) 687-3702 (F)

J. Max Rosen*
max.rosen@mto.com
Qian Zhe (Danny) Zhang*
danny.zhang@mto.com
MUNGER TOLLES & OLSON LLP
560 Mission Street, 27th Fl.
San Francisco, CA 94105-2907
(415) 512-4000 (T) | (415) 512-4077 (F)

**Pro hac vice* admission forthcoming
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................ 1

BACKGROUND ........................................ 1

ARGUMENT ........................................ 2

I. The Risk of Retaliatory Physical or Mental Harm Justifies the Use of Pseudonyms. ........................................ 3

  A. The Pseudonymous Plaintiffs Fear the Severe Harms of Violence, Harassment, and Other Retaliatory Actions........................................ 3

  B. The Pseudonymous Plaintiffs' Fears of Harm Are Reasonable........................................ 4

  C. The Pseudonymous Plaintiffs Are Vulnerable to Retaliation. ........................................ 6

  D. Anonymity Would Not Prejudice the Defendants Nor Impede the Public Understanding of This Litigation........................................ 7

  E. The Use of Pseudonyms Is in the Public Interest as It Does Not Obstruct Public Scrutiny and Allows the Case to be Decided on the Merits. ........................................ 8

II. Use of Pseudonyms Is Necessary to Preserve Daniel and Peter's Privacy in a Sensitive and Highly Personal Matter........................................ 9

CONCLUSION........................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Carcano v. McCrory*,
203 F. Supp. 3d 615 (M.D.N.C. 2016) ....................10

*D.T. v. Armstrong*,
2017 WL 2636519 (D. Idaho June 16, 2017) ....................2, 9, 10

*Davids v. Adams*,
No. 1:25-CV-00334-AKB, 2026 WL 867224 (D. Idaho Mar. 30, 2026) ....................1

*Doe v. College of Eastern Idaho*,
No. 4:22-CV-00482-DCN, 2023 WL 4138674 (D. Idaho June 22, 2023) .................... *passim*

*Doe v. Commonwealth's Attorney for City of Richmond*,
403 F. Supp. 119 (E.D. Va. 1975) ....................4

*Doe v. Deschamps*,
64 F.R.D. 652 (D. Mont. 1974)....................9

*Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate*,
596 F.3d 1036 (9th Cir. 2010) ....................3

*Doe v. Shapiro*,
302 F. Supp. 761 (D. Conn. 1969)....................4

*Doe v. University of Idaho*,
No. 1:23-CV-00409-AKB, 2024 WL 4308327 (D. Idaho Sept. 26, 2024)....................2

*Does I thru XXIII v. Advanced Textile Corp.*,
214 F.3d 1058 (9th Cir. 2000) .................... 1, passim

*Faith Action For Community Equity v. Hawaii*,
No. CIV. 13-00450 SOM, 2014 WL 320587 (D. Haw. Jan. 29, 2014) ....................4

*Idaho Organization of Resource Councils v. Labrador*,
No. 1:25-CV-00178-AKB, 2026 WL 184522 (D. Idaho Jan. 23, 2026) ....................1

*Jane Roes 1-2 v. SFBSC Mgmt., LLC,*
77 F. Supp. 3d 990, 996 (N.D. Cal. 2015) ....................7

*Jones v. Critchfield*,
803 F. Supp. 3d 1078 (D. Idaho 2025) ....................1, 9

*National Association of Waterfront Employers v. Chao*,
587 F. Supp. 2d 90 (D.D.C. 2008) ....................8

*Roe v. Critchfield*,
137 F.4th 912 (9th Cir. 2025) ....................9

*Roe v. Wade*,
410 U.S. 113 (1973)....................4

*Yacovelli v. Moeser*,
No. 02-cv-596, 2004 WL 1144183 (M.D.N.C. May 20, 2004) ....................8

**LEGISLATIVE MATERIALS**

Idaho Senate Bill 1322 (2026) ....................5

Idaho House Bill 516 (2026)....................5

Idaho House Bill 557 (2026)....................5

Idaho House Bill 607 (2026)....................5

Idaho House Bill 752 (2026)....................1, 5, 6

Idaho House Bill 822 (2026)....................5

**OTHER AUTHORITIES**

Associated Press, *Oregon man sentenced for LGBTQ hate crimes in Idaho, including trying to hit people with car*, ASSOCIATED PRESS (Nov. 3, 2023), *Accessible at* https://www.nbcnews.com/nbc-out/out-news/oregon-man-sentenced-lgbtq-hate-crimes-idaho-trying-hit-people-car-rcna123521 ....................5

Emma VandenEinde, *Deadly Club Q shooting reflects escalation in anti-LGBTQ hate around the Mountain West*, KUNC (Nov. 23, 2022), *Accessible at* https://www.kunc.org/regional-news/2022-11-23/deadly-club-q-shooting-reflects-escalation-in-anti-lgbtq-hate-around-the-mountain-west ....................5, 6

Jordan Grasso and Ilan Meyer, *Violence and Harassment Against Transgender Adults in California*, WILLIAMS INSTITUTE (November 2025), *Accessible at* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Violence-CA-Nov-2025.pdf....................3, 4

Joshua Arrayales and Christy Mallory, *Hate Crimes and Violence Against Transgender People in California and the U.S.: A Review of Existing Research*, THE WILLIAMS INSTITUTE at 4 (March 2026), *Accessible at* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Hate-Crimes-Review-Mar-2026.pdf....................4

*Kamehameha Sch./Bernice Pauahi Bishop Estate*, 625 F.3d 1182 (9th Cir. 2010) ....................10

Kyle Pfannenstiel, *For a Boise family of medical providers, Idaho criminal trans bathroom ban was the last straw*, Idaho Capital Sun (April 16, 2026), *Accessible at* https://idahocapitalsun.com/2026/04/16/for-a-boise-family-of-medical-providers-idaho-criminal-trans-bathroom-ban-was-the-last-straw/ ............................5

*Map: Attacks on Gender Affirming Care by State*, THE HRC FOUNDATION (accessed April 24, 2026), *Accessible at* https://www.hrc.org/resources/attacks-on-gender-affirming-care-by-state-map......................5

*Mapping Attacks on LGBTQ Rights in U.S. State Legislatures in 2026*, THE ACLU (accessed April 24, 2026), *Accessible at* https://www.aclu.org/legislative-attacks-on-lgbtq-rights-2026 ............................................4, 5

Rebecca Boone, *Online right-wing extremists amp up anti-LGBTQ rhetoric during Pride Month*, Associated Press (Jun. 13, 2022), *Accessible at* https://www.pbs.org/newshour/nation/online-right-wing-extremists-amp-up-anti-lgbtq-rhetoric-during-pride-month ......................................................................6

Recording, House Floor Debate, March 16, 2026, at 00:33:08-00:35:00. https://lso.legislature.idaho.gov/MediaArchive/ShowCommitteeOrMedia.do.........................5

Recording, Idaho House Committee on State Affairs February 6, 2026 at 00:08:10-00:09:22. https://lso.legislature.idaho.gov/MediaArchive/ShowMediaByCommittee.do .........................5

Shane Dixon Kavanaugh, *Idaho man found guilty of hate crime after beating transgender woman over bathroom use on Oregon coast*, THE OREGONIAN (Jan. 30, 2020)...........................................................................................................6

## INTRODUCTION

Plaintiffs Daniel Doe and Peter Poe request permission to proceed under pseudonym because they fear that they will be subject to criminal consequences, harassment, embarrassment, or other retaliatory actions by the government and private actors if their identities are revealed. *See* Dkt. 3-5 (Decl. of Daniel Doe ISO Mot. Prelim. Inj. Provisional Class Cert. ("Doe Decl.")) ¶¶ 18-20; Dkt. 3-8 (Decl. of Peter Poe ISO Mot. Prelim. Inj. Provisional Class Cert. ("Poe Decl.")) ¶¶ 17-19. Daniel and Peter are transgender people who currently use and would continue to use restrooms that align with their gender identity if Idaho House Bill 752 ("H.B. 752") were enjoined. Doe Decl. ¶ 8; Poe Decl. ¶ 8. These individuals reasonably fear the harassment and social stigma they may face if the details of their identities, highly sensitive medical histories, and transgender status are made public. Doe Decl. ¶¶ 18-20; Poe Decl. ¶¶ 17-19. Because nondisclosure of Daniel and Peter's identities is "necessary to protect [them] from harassment, injury, ridicule or personal embarrassment," Plaintiffs ask the Court to permit them to proceed under pseudonym. *See Doe v. Coll. of E. Idaho*, No. 4:22-CV-00482-DCN, 2023 WL 4138674, at *1 (D. Idaho June 22, 2023) (quoting *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000)); *see, e.g.*, *Davids v. Adams*, No. 1:25-CV-00334-AKB, 2026 WL 867224, at *2 (D. Idaho Mar. 30, 2026); *Idaho Org. of Res. Councils v. Labrador*, No. 1:25-CV-00178-AKB, 2026 WL 184522, at *10 (D. Idaho Jan. 23, 2026); *Jones v. Critchfield*, 803 F. Supp. 3d 1078, 1087 (D. Idaho 2025).

## BACKGROUND

Both Daniel and Peter are transgender men. Doe Decl. ¶ 3; Poe Decl. ¶ 3. Both use men's restrooms which align with their gender identity—acts that would become criminal if H.B. 752 were not enjoined. Doe Decl. ¶ 8; Poe Decl. ¶ 8. Both face severe risks of violence, harassment, and physical and mental health consequences if they are unable to use men's restrooms in any

government-owned buildings or places of public accommodation. Doe Decl. ¶¶ 11, 13-15, 17; Poe Decl. ¶¶ 12, 14-16.

Daniel and Peter both fear that they may be subject to harassment as a result of their restroom use and participation in this lawsuit. Doe Decl. ¶¶ 18-19; Poe Decl. ¶¶ 17-18. Peter's transgender status is not generally known in his community. He wishes to proceed pseudonymously to protect the private and highly sensitive issue of his transgender status. Poe Decl. ¶ 19. Both Daniel and Peter wish to proceed under pseudonym to protect the private and highly sensitive issue of their medical history. Doe Decl. ¶ 20; Poe Decl. ¶ 19. They fear that disclosure of their transgender status could subject them and their families to discrimination or shunning in their communities. Doe Decl. ¶ 19; Poe Decl. ¶ 18.

## **ARGUMENT**

"The Court has discretion to 'allow parties to use pseudonyms . . . when nondisclosure of the party's identity is necessary to protect a person from harassment, injury, ridicule or personal embarrassment.'" *Doe v. Coll. of E. Idaho*, No. 4:22-CV-00482-DCN, 2023 WL 4138674, at *1 (D. Idaho June 22, 2023) (quoting *D.T. v. Armstrong*, 2017 WL 2636519, at *1 (D. Idaho June 16, 2017)). The Ninth Circuit permits a plaintiff to proceed using a pseudonym when "(1) identification creates a risk of retaliatory physical or mental harm; (2) anonymity is necessary to preserve privacy in a sensitive and highly personal matter; and (3) disclosure would compel a plaintiff to admit illegal conduct creating a risk of criminal prosecution." *Doe v. Univ. of Idaho*, No. 1:23-CV-00409-AKB, 2024 WL 4308327, at *1 (D. Idaho Sept. 26, 2024) (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)); *see also Coll. of E. Idaho*, 2023 WL 4138674, at *2.

Here, Daniel, Peter, and their families reasonably fear retaliation from government officials, employers, and other private actors based on their transgender status, restroom use, and

the filing of this lawsuit. Further, Peter's transgender status and both pseudonymous plaintiffs' medical histories are highly sensitive and personal matters that they wish to remain private.

## I. The Risk of Retaliatory Physical or Mental Harm Justifies the Use of Pseudonyms.

As transgender people challenging the constitutionality of a law specifically designed to make Idaho a more hostile environment for them, Daniel and Peter are at a real risk of retaliation by the government and other third parties. A court may conceal a party's identity "to protect them from retaliation by third parties and also to protect nonparties from reprisals." *Advanced Textile Corp.*, 214 F.3d at 1070. In evaluating whether the risk of retaliation warrants use of a pseudonym, courts balance the following five factors: "'(1) the severity of the threatened harm, (2) the reasonableness of the anonymous party's fears, . . . (3) the anonymous party's vulnerability to such retaliation,' (4) the prejudice to the opposing party, and (5) the public interest." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010) (quoting *id.* at 1068). The severity of the threatened harm and the reasonableness of the plaintiffs' fears are "the two most important factors" which "are intricately related and should be addressed together." *Id.* at 1043; *see also Coll. of E. Idaho*, 2023 WL 4138674, at *2.

### A. The Pseudonymous Plaintiffs Fear the Severe Harms of Violence, Harassment, and Other Retaliatory Actions.

First, Daniel and Peter fear severe harm to themselves and their families as retaliation for their participation in this lawsuit, including violence and harassment. *See* Doe Decl. ¶ 18; Poe Decl. ¶ 17. Violence and harassment against transgender people is unfortunately widespread and routine. *See, e.g.*, Jordan Grasso and Ilan Meyer, *Violence and Harassment Against Transgender Adults in California*, WILLIAMS INSTITUTE (November 2025) (finding that 59% of California U.S. Transgender Survey participants experienced at least one incident of violence or harassment

in the year prior);[1] Joshua Arrayales and Christy Mallory, *Hate Crimes and Violence Against Transgender People in California and the U.S.: A Review of Existing Research*, THE WILLIAMS INSTITUTE at 4 (March 2026) (documenting an increase in hate crimes from 2018 to 2024 and finding that "nearly half of transgender people (47.6%) reported being physically attacked or sexually assaulted").[2]

**B. <u>The Pseudonymous Plaintiffs' Fears of Harm Are Reasonable.</u>**

Importantly, because the rights of transgender people have become politicized in recent years, Daniel and Peter's fear of severe harm to themselves and their families is reasonable. In cases involving discrimination against vulnerable minority groups, courts have recognized that forms of retaliation, such as criminal prosecution, are more likely as they may be used "as a tool to suppress the litigation, or that individual officers could feel so strongly about an issue as to personally retaliate against the plaintiffs." *Faith Action For Cmty. Equity v. Hawaii*, No. CIV. 13-00450 SOM, 2014 WL 320587, at *5 (D. Haw. Jan. 29, 2014); *see, e.g.*, *Roe v. Wade*, 410 U.S. 113, 120 (1973) (challenge to Texas law criminalizing abortion); *Doe v. Commonwealth's Attorney for City of Richmond*, 403 F. Supp. 119, 120 (E.D. Va. 1975) (challenge to Virginia's law criminalizing sodomy); *Doe v. Shapiro*, 302 F. Supp. 761, 761–62 (D. Conn. 1969) (plaintiffs' challenge to Connecticut welfare regulation that necessarily required plaintiffs to admit they had engaged in the crime of adultery).

The rights of transgender people have been highly politicized in the United States and Idaho. Bills targeting transgender people for discrimination have accelerated and become widespread. *See, e.g.*, *Mapping Attacks on LGBTQ Rights in U.S. State Legislatures in 2026*,

---

[1] *Accessible at* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Trans-Violence-CA-Nov-2025.pdf. The article is included in Dkt. 3-3 (Groves Decl.), Exhibit 16.
[2] *Accessible at* https://williamsinstitute.law.ucla.edu/wp-content/uploads/Hate-Crimes-Review-Mar-2026.pdf. The article is included in Groves Decl., Exhibit 17.

THE ACLU (accessed April 24, 2026);[3] *see also Map: Attacks on Gender Affirming Care by State*, THE HRC FOUNDATION (accessed April 24, 2026).[4] In Idaho specifically, laws targeting transgender people have been frequently introduced. *See, e.g.*, H.B. 557 (2026); H.B. 607 (2026); H.B. 822 (2026); H.B. 752 (2026); H.B. 516 (2026); S.B. 1322 (2026); *see also* Kyle Pfannenstiel, *For a Boise family of medical providers, Idaho criminal trans bathroom ban was the last straw*, Idaho Capital Sun (April 16, 2026) (noting "years of anti-LGBTQ+ legislation in Idaho").[5]

Here, officials in the State of Idaho have explicitly stated a desire to prevent transgender people from using restrooms that align with their gender identity, by criminal prosecution or violence. For example, House Representative Bruce Skaug stated that, when his daughter encountered a transgender woman in the SeaWorld restroom, "different things crossed [his] mind, including violence."[6] House Representative Dale R. Hawkins stated that "[i]f someone followed [his] daughter into a shower room, [his] family would have to come visit [him] somewhere [] [b]ecause [he] wouldn't be waiting for police."[7] Private violence targeting transgender people is unfortunately common. See, e.g., Associated Press, *Oregon man sentenced for LGBTQ hate crimes in Idaho, including trying to hit people with car*, ASSOCIATED PRESS (Nov. 3, 2023);[8] Emma VandenEinde, *Deadly Club Q shooting reflects escalation in anti-*

---

[3] *Accessible at* https://www.aclu.org/legislative-attacks-on-lgbtq-rights-2026. The date published in this webpage is included in Groves Decl., Exhibit 18.

[4] *Accessible at* https://www.hrc.org/resources/attacks-on-gender-affirming-care-by-state-map. The resource is included in Groves Decl., Exhibit 19.

[5] *Accessible at* https://idahocapitalsun.com/2026/04/16/for-a-boise-family-of-medical-providers-idaho-criminal-trans-bathroom-ban-was-the-last-straw/. The article is included in Groves Decl., Exhibit 20.

[6] House State Affairs Committee, February 6, 2026 at 00:08:25, *See* Groves Decl. ¶ 18.

[7] House Floor Debate, March 16, 2026, at 00:34:13, *See* Groves Decl. ¶ 18.

[8] *Accessible at* https://www.nbcnews.com/nbc-out/out-news/oregon-man-sentenced-lgbtq-hate-crimes-idaho-trying-hit-people-car-rcna123521. The article is included in Groves Decl., Exhibit 21.

*LGBTQ hate around the Mountain West*, KUNC (Nov. 23, 2022);[9] Rebecca Boone, *Online right-wing extremists amp up anti-LGBTQ rhetoric during Pride Month*, Associated Press (Jun. 13, 2022) (reporting that a "fundamentalist Idaho pastor told his Boise congregation that gay, lesbian and transgender people should be executed by the government.");[10] Shane Dixon Kavanaugh, *Idaho man found guilty of hate crime after beating transgender woman over bathroom use on Oregon coast*, THE OREGONIAN (Jan. 30, 2020).[11] It is thus reasonable for Daniel and Peter to fear that their use of restrooms after H.B. 752 takes effect or participation in this lawsuit could lead to violence and harassment against them or their families.

Daniel and Peter have a reasonable and serious fear of retaliatory actions against themselves and their families given the politicization of the rights of transgender people and the proliferation of violence against transgender people. As such, the first two "most important" factors point in favor of permitting use of pseudonyms. *See Coll. of E. Idaho*, 2023 WL 4138674, at *2; *Advanced Textile Corp.*, 214 F.3d at 1070.

### C. **The Pseudonymous Plaintiffs Are Vulnerable to Retaliation.**

The pseudonymous plaintiffs are vulnerable to retaliatory treatment as a result of their transgender status, restroom use, and participation in this lawsuit. This case may involve discussion of what restroom facilities the Plaintiffs encounter as they go about their daily lives. *See, e.g.*, Doe Decl. ¶ 9; Poe Decl. ¶ 9-10. In this vein, plaintiffs may need to discuss where they travel often. Disclosure of their identities could provide those who wish to retaliate against them

---

[9] *Accessible at* https://www.kunc.org/regional-news/2022-11-23/deadly-club-q-shooting-reflects-escalation-in-anti-lgbtq-hate-around-the-mountain-west. The article is included in Groves Decl., Exhibit 22.
[10] *Accessible at* https://www.pbs.org/newshour/nation/online-right-wing-extremists-amp-up-anti-lgbtq-rhetoric-during-pride-month. The article is included in Groves Decl., Exhibit 23.
[11] *Accessible at* https://www.oregonlive.com/crime/2020/01/idaho-man-found-guilty-of-hate-crime-after-beating-transgender-woman-over-bathroom-use-on-oregon-coast.html. The article is included in Groves Decl., Exhibit 24.

for participation in this lawsuit with their identities, knowledge of their transgender status, and clues as to how to locate them. As such, Daniel and Peter are vulnerable to retaliation. Because Daniel and Peter are vulnerable to retaliation, this factor strongly supports the use of pseudonyms.

### D. Anonymity Would Not Prejudice the Defendants Nor Impede the Public Understanding of This Litigation.

Defendants in this case will not be prejudiced by allowing Daniel and Peter to proceed under pseudonym. Whether the use of pseudonyms will prejudice the defendants is judged based on the current stage of the proceedings and with reference to the ability to structure proceedings so as to mitigate that prejudice. *See Advanced Textile*, 214 F.3d at 1068. In some cases, "[i]t may never be necessary . . . to disclose the anonymous parties' identities to nonparties to the suit." *Id.* at 1069. At this preliminary stage, there is no prejudice to Defendants in Daniel and Peter proceeding under pseudonym. *See Advanced Textile Corp.*, 214 F.3d at 1072 (finding that "defendants suffer no prejudice by not knowing the names of plaintiffs" during preliminary stages of the case).

The public not knowing Daniel and Peter's identity would not prejudice Defendants in any meaningful way from defending this case. Daniel and Peter do not seek to restrict the public's right to access the materials, proceedings, and court rulings in this case to the extent they do not disclose identifying information—instead, their request is narrowly tailored to prevent the disclosure of their identity. "Anonymity . . . does not . . . threaten the principle of open courts," particularly where, "[t]he great bulk of [a] case will be on the public record," including "[t]he basic facts of . . . the defendants' challenged conduct, the court's reasoning, and the resulting interplay of those things." *See Jane Roes 1-2 v. SFBSC Mgmt., LLC,* 77 F. Supp. 3d 990, 996 (N.D. Cal. 2015). The public will therefore have a full and fair understanding of the

litigation without knowing the identity of two plaintiffs challenging the law's constitutionality.

Furthermore, where the defendants are, as in this case, government officials sued in their official capacity, allowing the pseudonymous plaintiffs to proceed pseudonymously is especially appropriate. *See, e.g.*, *Nat'l Ass'n of Waterfront Emps. v. Chao*, 587 F. Supp. 2d 90, 99 n.9 (D.D.C. 2008) ("[W]hen a plaintiff challenges the government or government activity, courts are more like[ly] to permit plaintiffs to proceed under a pseudonym . . ." (quoting *Yacovelli v. Moeser*, No. 02-cv-596, 2004 WL 1144183, at *8 (M.D.N.C. May 20, 2004))).

If it becomes necessary at a later stage of the litigation, Daniel Doe and Peter Poe will not seek to withhold their identity from Defendants or the Court, subject to appropriate privacy safeguards. *See Advanced Textile Corp.*, 214 F.3d at 1069 n.11 ("[W]hatever knowledge defendants have of plaintiffs' identities . . . lessens their claims to be prejudiced by the use of pseudonyms.").

Because there is no prejudice to Defendants, and there is a serious risk of harm from identifying the pseudonymous plaintiffs publicly, the Court should allow Daniel and Peter to proceed pseudonymously.

### E. The Use of Pseudonyms Is in the Public Interest as It Does Not Obstruct Public Scrutiny and Allows the Case to be Decided on the Merits.

Allowing Daniel and Peter to proceed under pseudonym promotes the public interest by allowing them to vindicate their legal rights, and the rights of similarly situated Idahoans, without risk of violence and harassment. In a case "with 'widespread implications . . . of interest to the public at large,'" proceeding under pseudonym does not "obstruct public scrutiny of the important issues." *Advanced Textile Corp.*, 214 F.3d at 1072–73. Instead, proceeding under pseudonym promotes the public's interest in "seeing this case decided on the merits," by focusing attention on the harms that will be suffered by the plaintiffs, rather than immaterial

details about their identities. *Id.*

Here, Daniel and Peter are not willing to subject themselves and their families to the risk of violence and harassment. Thus, if the pseudonymous plaintiffs are not permitted to proceed anonymously, their willingness to challenge the government's violation of their rights will effectively be "chilled" and the public will not be afforded the benefit of seeing their claims decided on the merits. *Id.* at 1073. Granting this motion thus promotes the public interest.

## II. Use of Pseudonyms Is Necessary to Preserve Daniel and Peter's Privacy in a Sensitive and Highly Personal Matter.

The use of pseudonyms is necessary to preserve the privacy of Peter's transgender status and Daniel and Peter's medical history, which are highly sensitive and personal matters. When considering whether privacy concerns justify use of a pseudonym, courts balance the following three factors: "(1) the party's stated privacy concerns, (2) the prejudice to the opposing party, and (3) the public interest." *Coll. of E. Idaho*, 2023 WL 4138674, at *3 (citing *D.T. v. Armstrong*, No. 1:17-CV-00248-EJL, 2017 WL 2636519, at *2 (D. Idaho June 16, 2017)). "It is the right of everyone to preserve their privacy and decide when and how to disclose personal information if they so choose." *Id.*

Courts have previously permitted the use of pseudonyms when sensitive and highly personal matters were involved, including politically charged topics such as birth control, abortion, welfare, and sexual orientation. *Id.* (citing *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)). The rights of transgender people and their access to restrooms have indisputably been politicized. *See, e.g.*, *Roe v. Critchfield*, 137 F.4th 912, 919 (9th Cir. 2025) (providing the legislative history of S.B. 1100, an Idaho law requiring public schools to, among other things, sex-segregate multi-occupancy bathrooms, locker rooms and other facilities); *Jones v. Critchfield*, 803 F. Supp. 3d 1078, 1085 (D. Idaho 2025) (providing the legislative history of

H.B. 264, an Idaho law requiring all multi-occupancy restrooms in Idaho's universities be designated "male," or "female," and must only be used by members of "that sex."); *Carcano v. McCrory*, 203 F. Supp. 3d 615, 621 (M.D.N.C. 2016) (describing North Carolina's H.B. 2, the first "bathroom ban" bill introduced in 2016).

Further, matters that include information that, if disclosed, "might hinder [a person's] ability to socialize, find employment, and otherwise integrate in his community" may warrant the use of a pseudonym. *Coll. of E. Idaho*, 2023 WL 4138674, at *3 (citing *Armstrong*, 2017 WL 2636519 at *2). Given the hostility of the current environment towards transgender people, disclosure of Peter's name would hinder his and his family's ability to socialize, find employment, and otherwise integrate into their communities. In addition, if discussion of Daniel and Peter's surgical and medical history becomes relevant and is publicly revealed, they may face discrimination, harassment or judgment, and loss of employment. *See* Doe Decl. ¶¶ 18-20; Poe Decl. ¶¶ 17-19.

As discussed above, there is no prejudice to the government, and the public interest tilts in favor of using pseudonyms. As such, the Court should permit use of pseudonyms to protect the privacy of Daniel, Peter, and their families.

"[T]he federal courts must be safe havens for those who seek to vindicate their rights. No litigant should fear for his safety, or that of his family, as a condition of seeking justice." *Kamehameha Sch./Bernice Pauahi Bishop Estate*, 625 F.3d 1182, 1183 (9th Cir. 2010) (Kozinski, J., dissenting from denial of rehearing en banc). Because the disclosure of Daniel and Peter's names carries the real and severe threats of retaliatory actions or harassment, and violation of privacy of highly sensitive and personal matters, the Court should permit Daniel Doe and Peter Poe to proceed under pseudonym.

## CONCLUSION

For the foregoing reasons, the Plaintiffs Daniel Doe and Peter Poe request that the Court permit them to proceed using pseudonyms.

DATED: April 29, 2026

Respectfully Submitted

By: */s/ Samuel L. Linnet*

Samuel L. Linnet
ALTURAS LAW GROUP, PLLC

J. Max Rosen
Katherine M. Forster
Kyle A. Groves
Qian Zhe (Danny) Zhang
Jannet Gomez
MUNGER TOLLES & OLSON LLP

Emily Croston
Paul Southwick
ACLU OF IDAHO FOUNDATION

Barbara Schwabauer
Eleanor Matheson
Chase Strangio
AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Peter C. Renn
Kell L. Olson
Tara L. Borelli
Pelecanos
A.D. Sean Lewis
Charlie Ferguson
LAMBDA LEGAL DEFENSE & EDUCATION FUND