RAÚL R. LABRADOR
ATTORNEY GENERAL

MICHAEL A. ZARIAN, ISB #12418
Solicitor General

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

DAVID J. MYERS, ISB #6528
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for Defendants Labrador and
43 of the 44 County Prosecutors*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILIE JACKSON-EDNEY, *et al.*,<br><br>          *Plaintiffs*,<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al.*,<br><br>          *Defendants*. | Case No. 1:26-cv-00261-AKB<br><br>**ATTORNEY GENERAL'S RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION [DKT. 3]** |

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

BACKGROUND .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 3

ARGUMENT ....................................................................................................................... 4

   I.    H.B. 752 is not void for vagueness. ...................................................... 4

      A. Restroom "designated for use by the opposite biological sex" is not vague. ................ 5

      B. H.B. 752's exceptions are not vague. ................................................................ 7

   II.   Plaintiffs are not likely to succeed on the merits of their equal protection claim. ............. 10

      A. Plaintiffs' preliminary injunction motion seeks relief based on a claim that is different from the one pled. ................................................................... 10

      B. H.B. 752 does not trigger heightened scrutiny because it is nondiscriminatory. .......... 12

      C. H.B. 752 easily survives rational basis review, or even intermediate scrutiny. ............ 14

      D. Plaintiffs' as-applied-challenge theory is foreclosed by Supreme Court precedent, and meritless in any event. ................................................................... 18

      E. H.B. 752 is not the product of animus. ........................................................... 20

   III.   H.B. 752 does not infringe any right to informational privacy. .................................. 22

   IV.   The remaining preliminary injunction factors weigh against an injunction. .................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**CASES**

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
  57 F.4th 791 (11th Cir. 2022).................................................................................................16

*Anderson v. Crouch*,
  169 F.4th 474 (4th Cir. 2026)..................................................................................................12

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023)...............................................................................................4, 25

*Barr v. Am. Ass'n of Pol. Consultants*,
  591 U.S. 610 (2020)...................................................................................................................7

*Belle Maer Harbor v. Charter Twp. of Harrison*,
  170 F.3d 553 (6th Cir. 1999).....................................................................................................8

*Bridge v. Okla. State Dep't of Educ.*,
  711 F. Supp. 3d 1289 (W.D. Okla. 2024)...............................................................................17

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ...................................................................................................................1

*Buschmann v. Schweiker*,
  676 F.2d 352 (9th Cir. 1982).....................................................................................................9

*Byrd v. Maricopa Cnty. Sheriff's Dep't*,
  629 F.3d 1135 (9th Cir. 2011)............................................................................................15, 20

*City of Renton v. Playtime Theatres, Inc.*,
  475 U.S. 41 (1986)...................................................................................................................17

*Clark v. Ariz. Interscholastic Ass'n*,
  695 F.2d 1126 (9th Cir. 1982)............................................................................................18, 20

*D.P. by A.B. v. Mukwonago Area Sch. Dist.*,
  2025 WL 1794428 (7th Cir. June 30, 2025)............................................................................13

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019).................................................................................................................15

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022)............................................................................................................15, 24

*Doe v. Att'y Gen. of U.S.*,
  941 F.2d 780 (9th Cir. 1991)....................................................................................................22

*Doe v. Horne*,
  115 F.4th 1083 (9th Cir. 2024)............................................................................................18, 19

*Espinoza v. Mont. Dep't of Revenue*,
  591 U.S. 464 (2020)....................................................................................................................7

*Familias Unidas por la Justicia, AFL-CIO v. U.S. Dep't of Lab.*,
  795 F. Supp. 3d 1325 (W.D. Wash. 2025)..............................................................................11

*FCC v. Fox Television Stations, Inc.*,
  567 U.S. 239 (2012) ..................................................................................................10

*Freedom to Travel Campaign v. Newcomb*,
  82 F.3d 1431 (9th Cir. 1996) ......................................................................................9

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ....................................................................................................4

*Grimm v. Gloucester Cnty. Sch. Bd.*,
  972 F.3d 586 (4th Cir. 2020) ....................................................................................13

*Gonzales v. Carhart*,
  550 U.S. 124 (2007) ....................................................................................................5

*Gooden v. Edmond Pub. Schs.*,
  No. CJ-2023-2959 (Okla. Dist. Ct. Okla. Cnty. May 25, 2023) ..............................17

*Gore v. Lee*,
  107 F.4th 548 (6th Cir. 2024) ....................................................................14, 23, 24

*Hart v. Att'y Gen. of Md.*,
  2024 WL 4201418 (D. Md. Sept. 16, 2024) .............................................................17

*Hecox v. Little*,
  79 F.4th 1009 (9th Cir. 2023) ...................................................................................16

*Hill v. Colorado*,
  530 U.S. 703 (2000) ....................................................................................................4

*Hutton v. State*,
  190 N.E.3d 413 (Ind. Ct. App. 2022) .......................................................................17

*In re Commitment of Thedford*,
  2023 WL 107121 (Tex. App. Jan. 5, 2023) ..............................................................17

*In re Crawford*,
  194 F.3d 954 (9th Cir. 1999) ....................................................................................24

*Jones v. Critchfield*,
  803 F.Supp.3d 1078 (D. Idaho 2025) .........................................................................3

*John Doe No. 1 v. Reed*,
  561 U.S. 186 (2010) ..................................................................................................11

*Johnson v. United States*,
  576 U.S. 591 (2015) ............................................................................................4, 5, 6

*Kahn v. Shevin*,
  416 U.S. 351 (1974) ..................................................................................................18

*Kashem v. Barr*,
  941 F.3d 358 (9th Cir. 2019) ......................................................................................5

*Katz v. United States*,
  389 U.S. 347 (1967) ..................................................................................................24

*L.W. v. Skrmetti,*
  83 F.4th 460 (6th Cir. 2023) ..................................................................................12

*Maryland v. King,*
  567 U.S. 1301 (2012) ..............................................................................................25

*Michael M. v. Superior Ct. of Sonoma Cnty.,*
  450 U.S. 464 (1981) ................................................................................................19

*Miller v. Gammie,*
  335 F.3d 889 (9th Cir. 2003) ..................................................................................13

*Moody v. NetChoice, LLC,*
  603 U.S. 707 (2024) ................................................................................................11

*Moving Oxnard Forward, Inc. v. Lopez,*
  173 F.4th 1070 (9th Cir. 2026) ...............................................................................21

*NASA v. Nelson,*
  562 U.S. 134 (2011) ...........................................................................................22, 24

*NetChoice, LLC v. Bonta,*
  170 F.4th 744 (9th Cir. 2026) .................................................................................11

*Nixon v. Adm'r of Gen. Servs.,*
  433 U.S. 425 (1977) ................................................................................................22

*Nw. Ass'n of Indep. Schs. v. Labrador,*
  166 F.4th 1148 (9th Cir. 2026) .................................................................................6

*Panther v. Hames,*
  991 F.2d 576 (9th Cir. 1993) ....................................................................................8

*People v. Waqa,*
  309 Cal. Rptr. 3d 633 (Cal. App. Ct. 2023) ...........................................................17

*Pers. Adm'r of Mass. v. Feeney,*
  442 U.S. 256 (1979) ...........................................................................................12, 21

*Rath Packing Co. v. Becker,*
  530 F.2d 1295 (9th Cir. 1975) ..................................................................................8

*Reach Cmty. Dev. v. U.S. Dep't of Homeland Sec.,*
  2026 WL 1133351 (9th Cir. Apr. 27, 2026) ...........................................................23

*Reed v. Reed,*
  404 U.S. 71 (1971) ............................................................................................12, 14

*Roe v. Critchfield,*
  2023 WL 6690596 (D. Idaho Oct. 12, 2023) .............................................3, 14, 24, 25

*Roe v. Critchfield,*
  137 F.4th 912 (9th Cir. 2025) .............................................................................*passim*

*Romer v. Evans,*
  517 U.S. 620 (1996) ................................................................................................20

*Rostker v. Goldberg*,
   453 U.S. 57 (1981) ...................................................................................................18

*SAGA v. Critchfield*,
   2025 WL 2256884 (D. Idaho Aug. 7, 2025)...............................................................*passim*

*Sepulveda v. Ramirez*,
   967 F.2d 1413 (9th Cir. 1992)....................................................................................15

*Sessions v. Morales-Santana*,
   582 U.S. 47 (2017) ......................................................................................................7

*Simon v. City & Cnty. of San Francisco*,
   135 F.4th 784 (9th Cir. 2025).....................................................................................11

*Starbucks Corp. v. McKinney*,
   602 U.S. 339 (2024)................................................................................................4, 22

*State v. Brown*,
   164 So. 3d 395 (La. App. Ct. 2015) ..........................................................................17

*Trump v. Hawaii*,
   585 U.S. 667 (2018)...................................................................................................20

*Tuan Anh Nguyen v. I.N.S.*,
   533 U.S. 53 (2001) .....................................................................................................18

*United States v. Edge Broad. Co.*,
   509 U.S. 418 (1993)....................................................................................................19

*United States v. Kuzma,*
   967 F.3d 959 (9th Cir. 2020).......................................................................................7

*United States v. Ragen*,
   314 U.S. 513 (1942).....................................................................................................8

*United States v. Rahimi*,
   602 U.S. 680 (2024)................................................................................................4, 22

*United States v. Skrmetti*,
   605 U.S. 495 (2025)...............................................................................12, 13, 14, 21

*United States v. Virginia*,
   518 U.S. 515 (1996)................................................................................................1, 14

*Util. Air Regul. Grp. v. EPA*,
   573 U.S. 302 (2014)......................................................................................................9

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982)..................................................................................................7, 8

*Washington v. Glucksberg*,
   521 U.S. 702 (1997)...................................................................................................23

*Whalen v. Roe*,
   429 U.S. 589 (1977)...................................................................................................22

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ................................................................................................4, 25

**STATUTES**

H.B. 752 § 1, 68th Leg., 2d Reg. Sess. (Idaho 2026) ........................................... *passim*

Idaho Code § 33-6701 ...................................................................................................3

Idaho Code § 67-9801 ...................................................................................................3

**RULES AND REGULATIONS**

IDAPA 24.39.30.600 ....................................................................................................6

Int'l Bldg. Code ch. 29, § 2902.2 (2018) ....................................................................6

Int'l Bldg. Code ch. 29, § 2902.4 (2018) ....................................................................6

**OTHER AUTHORITIES**

Aditi Bhargava, et al., *Considering Sex as a Biological Variable in Basic & Clinical Studies: An
　Endocrine Society Scientific Statement*, Endocrine Rev. (Mar. 11, 2021)........................................1

Alison Li, *Harry Benjamin and the Birth of Transgender Medicine*, Canadian Med. Ass'n J.
　(Dec. 11, 2023) ...........................................................................................................24

*Available*, Merriam-Webster Dictionary ....................................................................8

Briana Oser, *Young Girl is Raped in School Bathroom by Transgender Peer*, Wash. Examiner
　(June 20, 2023).............................................................................................................17

*Designate*, Merriam-Webster Dictionary ...................................................................6

*Gender & Health*, World Health Org. .........................................................................1

Glossary of Terms, Hum. Rts. Campaign (May 31, 2023) ............................................1

*Is Drag the Same as Transgender?*, Planned Parenthood (Oct. 13, 2025)......................................23

Kevin Stuart & DeAnn Barta Stuart, *Behind Closed Doors: Public Restrooms and the Fight for
　Women's Equality*, 24 Tex. Rev. L. & Pol. 1 (2019)........................................................15

*Man*, Merriam-Webster Dictionary .............................................................................5

Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869–1932*, 48 J. of Soc. Hist.
　264 (2014).............................................................................................................15, 24

*Reasonably*, Merriam-Webster Dictionary...................................................................8

Rhema Thompson, *Growing number of local businesses adopting gender-neutral signs for their
　bathrooms*, Jacksonville News (June 30, 2015).............................................................6

Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post (Apr. 7, 1975).........15

*Sexual Predator Jailed After Claiming to Be "Transgender" to Assault Women in Shelter*,
　LifeSite News (Mar. 4, 2014) ......................................................................................17

Shaziya Allarakha, *What are the 72 Other Genders?*, Med. Net
(medically reviewed Feb. 9, 2024) ................................................................................ 1

Skyler Shepard, *Hidden Cameras in Shared Bathroom Lead to 58 Video Voyeurism Counts in Palm Beach County*, CBS 12 News, (Feb. 3, 2025) ................................................................. 20

Transcript of Oral Argument, *Little v. Hecox*, No. 24-38 (U.S. Jan. 13, 2026) ................................ 19

*Understanding Transgender People, Gender Identity & Gender Expression*, Am. Psych. Ass'n
(July 8, 2024) ................................................................................................................ 1

W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227 (2018) ............................................................. 14

*Woman*, Merriam-Webster Dictionary ......................................................................................... 5

## BACKGROUND

Before describing the background of H.B. 752, a brief explanation of key terms is necessary.

The terms sex and gender identity refer to "distinct concepts." *Bostock v. Clayton County*, 590 U.S. 644, 669 (2020). "Sex" is defined by the "inherent" and "enduring" "[p]hysical differences between men and women," differences that "remain cause for celebration." *United States* v. *Virginia*, 518 U.S. 515, 533 (1996). Sex is binary, objective, and defined by inherent and unalterable characteristics in male and female genetics; every cell of the body is coded with sex chromosomes that drive physical and physiological differences between males and females—as confirmed even by prominent medical and health organizations that support rights based on transgender status.[1]

Conversely, gender identity is a subjective concept that "refers to a person's deeply felt, internal and individual experience of gender, which may or may not correspond to the person's physiology or designated sex at birth." *Gender & Health*, World Health Org., perma.cc/EP5S-SYR6. Many people who identify as transgender do not identify as either sex, but instead as both sexes, neither sex, or something else entirely. A recent summary catalogues at least 72 gender identities, including many non-binary ones. Shaziya Allarakha, *What are the 72 Other Genders?*, Med. Net (medically reviewed Feb. 9, 2024), perma.cc/W9WH-R26F. And transgender advocacy groups explain that one's gender identity can be "fluid or unfixed." Glossary of Terms, Hum. Rts. Campaign (May 31, 2023), perma.cc/7NPV-RPCT.

With these definitions and biological realities in mind, Idaho enacted House Bill 752 ("H.B. 752"), signed into law on March 31, 2026. H.B. 752 "treat[s] a gap" in Idaho's criminal code.

---

[1] *E.g.*, Aditi Bhargava, et al., *Considering Sex as a Biological Variable in Basic & Clinical Studies: An Endocrine Society Scientific Statement*, Endocrine Rev. (Mar. 11, 2021) ("Sex is a biological concept . . . . [A]ll mammals have 2 distinct sexes . . . . Sex is dichotomous"), perma.cc/V99Y-PJP2; *Understanding Transgender People, Gender Identity & Gender Expression*, Am. Psych. Ass'n (July 8, 2024) ("sex "refers to one's biological status as either male or female"), perma.cc/PN4Y-QZQ3.

Considine Decl. ¶ 2a; *accord id.* ¶¶ 2b, 2c, 3a, 4a. Legislators explained that Idaho's existing indecent-exposure statute did not seem to reach the entry by a member of one sex into another sex's intimate facilities in public places, leaving Idahoans vulnerable to the invasion of bodily privacy, dignity, and safety in such spaces. *Id.* ¶¶ 2d, 2a, 2e, 4b, 4c. H.B. 752 seeks to prevent those harms, and accordingly prescribes penalties comparable to the indecent exposure law. *Id.* ¶ 2g.

Recent events across Idaho and testimony given on the floor of the Legislature confirmed a need for a specific law protecting bodily privacy and safety in public changing rooms and restrooms. In Ammon, Idaho, a male identifying as transgender reached over a Target changing room door and took photos of an 18-year-old girl trying on swimwear. *Id.* ¶ 2h. Multiple Sandpoint community members described concerns involving a male attendee's use of the women's locker room and restroom at the local YMCA under the business's then-existing policy. *Id.* ¶¶ 4d, 2i, 2j, 2k. A Bonner County woman shared that she was a survivor of two attempted rapes in "changing areas without single-sex accommodations" and explained that she and her daughter were terrified of using public restrooms as a result. *Id.* ¶ 2l. And former law enforcement officer Robert Gillis testified that H.B. 752 would curtail the rising number of men committing video voyeurism in women's restrooms across the State. *Id.* ¶ 4e.

H.B. 752 addresses these concerns by prohibiting "[a]ny person"—regardless of gender identity or transgender status—from "knowingly and willfully enter[ing] a restroom or changing room in a government-owned building or a place of public accommodation . . . that is designated for use by the opposite biological sex." H.B. 752 § 1, 68th Leg., 2d Reg. Sess. (Idaho 2026). It creates exceptions for certain circumstances, including to "perform custodial services," "render medical assistance," or "provide coaching or athletic training during athletic events." *Id.* A violation of the law constitutes a misdemeanor, and a repeat violation constitutes a felony. *Id.*

H.B. 752 is not the first law Idaho has passed to ensure bodily privacy and safety through sex-separated restrooms. There are two other lawsuits pending in this district challenging similar laws, both before Judge Nye. Both laws have been upheld against preliminary injunction motions.

In 2023, the court found that a law requiring Idaho public schools (K-12) to maintain sex-separated restrooms, locker rooms, changing facilities, and overnight accommodations was likely constitutional. *Roe v. Critchfield*, 2023 WL 6690596, at *9 (D. Idaho Oct. 12, 2023) (concerning Idaho Code § 33-6701 *et seq*). That decision was affirmed by the Ninth Circuit, concluding that Idaho had identified important "privacy and safety objectives" in protecting students from exposure to opposite-sex unclothed bodies in spaces where bodily exposure is likely to occur. *Roe v. Critchfield*, 137 F.4th 912, 923–25 (9th Cir. 2025). Shortly thereafter, this court denied a second request for preliminary injunctive relief with respect to restrooms only. *SAGA v. Critchfield*, 2025 WL 2256884 (D. Idaho Aug. 7, 2025). That case was recently voluntarily dismissed.

In the other similar lawsuit, the court denied a request for a preliminary injunction regarding a similar law that applies to colleges and universities. *Jones v. Critchfield*, 803 F.Supp.3d 1078, 1089–95 (D. Idaho 2025) (concerning Idaho Code § 67-9801 *et seq*). There, Judge Nye concluded that sex-separated restrooms were substantially related to Idaho's interest in "protecting the privacy of the sexes," recognizing "that "[e]ven having to share a multi-occupancy restroom with a person of the opposite sex"—including in communal restroom areas outside enclosed stalls—"can be an invasion of privacy". *Id.* at 1091–92. An appeal from that ruling is still pending.

Like the laws at issue in *SAGA* and *Jones*, H.B. 752 is part of the Idaho Legislature's continued effort to guard against invasions of bodily privacy and safety in restrooms.

### LEGAL STANDARD

"A preliminary injunction is an 'extraordinary' equitable remedy that is 'never awarded as of

right.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). The movant bears the burden to "make a clear showing that '[1] he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Starbucks*, 602 U.S. at 346 (quoting *Winter*, 555 U.S. at 20). When the nonmovant is the State, the last two factors merge. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).

## ARGUMENT

"Separating restrooms by biological sex has been common for centuries." *SAGA*, 2025 WL 2256884, at *8. Sex-separated bathrooms promote privacy and eliminate safety concerns, especially for women and girls. H.B. 752 codifies this longstanding, common-sense practice. It proscribes conduct with reasonable clarity, treats both sexes equally without targeting any class, and does not force disclosure of any constitutionally protected information. Plaintiffs are unlikely to succeed on the merits and have not satisfied the remaining requirements for a preliminary injunction.

## I.    H.B. 752 is not void for vagueness.

Plaintiffs' lead challenge is that H.B. 752 contains three phrases that are unconstitutionally vague on their face—one in its central prohibition and two in the exceptions to that prohibition.

A statute is impermissibly vague if it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "Condemned to the use of words, we can never expect mathematical certainty from our language," so "flexibility and reasonable breadth" are permitted in statutory drafting if "it is clear what the ordinance as a whole prohibits." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). Thus, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (cleaned up). Moreover,

vagueness concerns are "alleviate[d]" where, as here, the statute contains "scienter requirements." *Gonzales v. Carhart*, 550 U.S. 124, 149 (2007).

Plaintiffs' challenge is meritless—H.B. 752 is not unconstitutionally vague on its face.

**A.     Restroom "designated for use by the opposite biological sex" is not vague.**

H.B. 752 prohibits any person from "knowingly and willfully enter[ing] a restroom or changing room . . . that is designated for use by the opposite biological sex." H.B. 752, Idaho Code § 18-4117(1). Plaintiffs argue this prohibition is vague because they will not be able to discern which bathrooms are designated for a specific sex. Dkt. 3-1 at 11–13. But this argument strains credulity— Plaintiffs themselves admit that "[r]estrooms are frequently marked [with] 'men' or 'women,'" Dkt. 3-1 at 12, and the ordinary definitions of those words denote sex: "an adult *male* human" and "an adult *female* person," respectively.[2] Context confirms the ordinary meaning—there are two restrooms (tracking the binary concept of sex), the two sexes have distinct anatomy requiring separate restrooms, and "[s]eparating restrooms by biological sex has been common for centuries." *SAGA*, 2025 WL 2256884, at *8. Thus, "ordinary people" have fair notice that a restroom displaying a "men" sign (for example) is designated for use by those of the male sex. *Johnson*, 576 U.S. at 595.

Still, Plaintiffs complain that some restrooms might not say "men" or "women," and instead will display only stick-figure images—one with a dress, and one without. Whether or not it is a "gender stereotype[ ]" to assume only members of the female sex wear dresses, Dkt. 3-1 at 12, there is no disputing that these figures have become the universal symbols for men's and women's restrooms. *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019) (vagueness is an "objective inquiry"). It's why those who promote "all gender restroom[s]" have developed a new stick figure wearing

---

[2] *Man*, Merriam-Webster Dictionary, https://tinyurl.com/3c8jnrbe (emphasis added); *Woman*, Merriam-Webster Dictionary, https://tinyurl.com/3rc5u7bn (emphasis added).

only half a dress. Rhema Thompson, *Growing number of local businesses adopting gender-neutral signs for their bathrooms*, Jacksonville News (June 30, 2015), https://tinyurl.com/3cer85u9. Lest there be any doubt that these standard signs mean to designate sex, the International Building Code that most public buildings in the State must follow *requires* that, with a few exceptions, "separate facilities shall be provided for each sex," and that "public facilities shall be provided with signs that designate the sex." Int'l Bldg. Code ch. 29, §§ 2902.2, 2902.4 (2018), https://tinyurl.com/4h22pc2t; *e.g.*, IDAPA 24.39.30.600 (adopting the International Building Code).

Finally, Plaintiffs argue that they may not know whether the owner of a place of public accommodation "intends" restrooms marked "men" and "women" to be used by those sexes—perhaps the proprietor means to allow anyone who identifies as a man to enter the men's room or has permitted such conduct in the past. Dkt. 3-1 at 12. Even if subjective intent *were* the benchmark for whether a restroom is "designated" for a particular sex, it's not clear why that would create any vagueness—those seeking to comply would know what conduct is permitted and forbidden and could simply ask the proprietor who the intended users of the bathrooms are. *See Johnson*, 576 U.S. at 603–04 ("we do not doubt the constitutionality of laws that call for the application of a qualitative standard [] to real world conduct; the law is full of instances where a man's fate depends on estimating rightly . . . some matter of degree") (cleaned up).

But Plaintiffs have misconstrued the statute in their effort to invalidate it. *Contra Nw. Ass'n of Indep. Schs. v. Labrador*, 166 F.4th 1148, 1157 (9th Cir. 2026) (courts must ask if statute is "readily susceptible to a limiting construction that would render it constitutional"). The ordinary meaning of "designate" means "to indicate and set apart for a specific purpose."[3] Thus, it is the restroom's signs—which *indicate* "man" and "woman"—that matter, not the proprietor's

---

[3] *Designate*, Merriam-Webster Dictionary, https://tinyurl.com/yu9kxry3.

subjective intent. That interpretation accords with binding precedent addressing vagueness challenges to similar language. *United States v. Kuzma,* 967 F.3d 959, 969–70 (9th Cir. 2020) (the phrase "designed to shoot" "requires a purely objective examination of the design features and not an inquiry into the manufacturer's subjective intent" and is not facially vague); *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 500, 504 (1982) ("designed . . . for use with illegal cannabis or drugs" refers to "objective features" and is not facially vague).

### B.    H.B. 752's exceptions are not vague.

Plaintiffs also challenge two of the exceptions in which a person *can* enter a restroom designated for the opposite biological sex. A person may do so "[t]o use a single-user facility designated for the opposite sex, if such single-user facility is the only facility reasonably available at the time of the person's use of the facility," and "[t]o use restroom facilities when the person is in dire need of urinating or defecating and such facility is the only facility reasonably available at the time of the person's use." H.B. 752, Idaho Code § 18-4117(2)(e)-(f). Plaintiffs argue that "reasonably available" and "dire need of urinating or defecating" are unconstitutionally vague.

As an initial matter, even if Plaintiffs' arguments had merit, they wouldn't be entitled to the relief they seek. When only a portion of a statute suffers from a constitutional defect, the remedy is to invalidate the defective portion. *E.g.*, *Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610 (2020) (invalidating only the exception to statute's restriction on robocalls); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 487–88 (2020) (invalidating only an exception rather than entire scholarship program). Thus, proving that an *exception* is vague rather than the *prohibition* would not authorize the Court to invalidate the entire prohibition. *Sessions v. Morales-Santana*, 582 U.S. 47, 76 (2017) (opting to "abrogate[ ] [the statute's] exception, preferring preservation of the general rule").

In any event, Plaintiffs' criticisms of the exceptions are baseless.

***"Reasonably available."*** People of ordinary intelligence can understand what it means for a

restroom not to be "reasonably available at the time of the person's use of the facility." The question turns on whether the bathroom is "present or ready for immediate use" "to a fairly sufficient extent."[4] For example, a bathroom that is out of order for the day would not be reasonably available.

Plaintiffs begin by complaining that "reasonableness" is inherently ambiguous. But reasonableness standards are *pervasive* in the law—if reasonableness were unconstitutionally vague, there's no telling how many statutes would be invalid. Sensibly, courts have widely rejected such challenges. *United States v. Ragen*, 314 U.S. 513, 524 (1942) ("a question of reasonableness is not sufficient to make [a statute] too vague to afford a practical guide to permissible conduct"); *Rath Packing Co. v. Becker*, 530 F.2d 1295, 1309 (9th Cir. 1975) ("This standard is of ancient provenance in English and American law and is not obnoxious in itself to the Fifth Amendment of the Constitution."); *Panther v. Hames*, 991 F.2d 576, 578 (9th Cir. 1993).[5]

In reality, Plaintiffs' concern is with a single potential application of the two H.B. 752 exceptions—whether a restroom is "reasonably available" if a transgender-identifying person is unwilling to use it. *But see Vill. of Hoffman Ests.*, 455 U.S. at 494–95 (facial challenge can succeed "only if the enactment is impermissibly vague in *all* of its applications") (emphasis added). But there is no ambiguity in that situation—the exceptions plainly would not apply because H.B. 752's plain statutory text turns on the *restroom's* readiness for use (i.e., availability), not the *person's* willingness to use it. If the restroom is in service and unoccupied, it is clearly "available."

That enduring objections based on one's gender identity are not covered by the exceptions is

---

[4] *Reasonably*, Merriam-Webster Dictionary, https://tinyurl.com/2a8ur7fw; *Available*, Merriam-Webster Dictionary, https://tinyurl.com/2vyjbuc5.

[5] In the lone, non-binding case Plaintiffs cite, a city ordinance's use of "reasonable" was deemed vague only because there was no "intelligible standard" to inform what was reasonable. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 558 (6th Cir. 1999). That's not the case here—people have a lifetime of experience to inform them when a bathroom will become available.

confirmed by the statute's command to assess the reasonable availability "at the time of the person's use." H.B. 752, Idaho Code § 18-4117(2)(e)-(f). Thus, H.B. 752 is concerned with temporary conditions that make a restroom inaccessible, not abiding personal unwillingness. Moreover, if Plaintiffs' proposed situation did fall within the exception, the exception would "swallow the rule"—a result that should be avoided. *Buschmann v. Schweiker*, 676 F.2d 352, 357 (9th Cir. 1982).

Plaintiffs' contrary arguments obfuscate by using the term "reasonable" outside the context of the statute. They argue it is not "reasonable" to require them to use a restroom inconsistent with their gender identity, but that has nothing to do with whether the restroom itself is "reasonably available" under H.B. 752. Plaintiffs also assert that previous laws regulating restroom usage and defining what constitutes a "reasonable accommodation" should have some relevance here. Not so—"reasonable accommodation" is a completely different "statutory term" that "take[s] on distinct characters from association with distinct statutory objects." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014). Here, it was not necessary for the Legislature to address the situation Plaintiffs bring up because it is clearly not covered by the phrase "reasonably available."

***"Dire need."*** For one of the two exceptions that applies when a restroom corresponding to the person's biological sex is not reasonably available, the person must also show that he or she has a "dire need of urinating or defecating." H.B. 752, Idaho Code § 18-4117(2)(f). Plaintiffs argue that "dire need" is vague because it is undefined—but then immediately are able to cite the ordinary meaning of the phrase. *See Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1440 (9th Cir. 1996) ("Even undefined, this term is not unconstitutionally vague"). And the ordinary meaning of "dire need" is something that everyone who has been asked "can you hold it?" by a parent on a road trip is able to assess—whether the need to urinate or defecate can wait until a restroom is available.

Plaintiffs raise two meritless counterarguments. First, they claim they have a "dire need" to

use restrooms "aligned with their gender identity." Dkt. 3-1 at 11. But once again, they've ignored the words of the statute, which ask whether the person has a "dire need *of urinating or defecating*." H.B. 752, Idaho Code § 18-4117(2)(f) (emphasis added). Second, they contend police officers will be unable to assess a person's dire need to urinate or defecate. But that has nothing to do with vagueness. "[A] regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved." *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). To the extent it is difficult to disprove a dire need to urinate or defecate beyond a reasonable doubt, all that means is the prohibition is less likely to be enforced.

## II.    Plaintiffs are not likely to succeed on the merits of their equal protection claim.

Turning to equal protection, Plaintiffs' preliminary injunction motion does not even *try* to show a likelihood of success on the claim they brought in their complaint. Instead, Plaintiffs fashion a new claim and argue that they are likely to succeed on *that*. Plaintiffs may not employ this sleight of hand. Regardless, neither version of their equal protection claim is likely to succeed.

### A.    Plaintiffs' preliminary injunction motion seeks relief based on a claim that is different from the one pled.

Although their complaint alleges that H.B. 752 is unconstitutional generally as to *all* restrooms, Dkt. 1 ¶¶ 5, 152, and has prayed for correspondingly broad relief, Dkt. 1 ¶¶ 169–70, Plaintiffs do not argue in their preliminary injunction motion that they are likely to succeed on that claim. Instead, they argue only that H.B. 752 is unconstitutional as applied to themselves and other transgender-identifying individuals in two "narrow contexts": (1) single-user restrooms designated for the opposite sex, and (2) "multi-occupancy restrooms where no gender-neutral single-user restroom is reasonably available." Dkt. 3-1 at 8, 13.

Of course, Plaintiffs cannot prevail on the facial claim they brought by showing that H.B. 752 is unconstitutional in two isolated circumstances. Plaintiffs have chosen to bring a facial

challenge to H.B. 752's "restroom" prohibition, and that choice "comes at a cost." *Moody v. NetChoice, LLC,* 603 U.S. 707, 723 (2024). It means they must "establish[ ] that no set of circumstances exists under which the [restroom prohibition] would be valid." *Id.* (cleaned up).[6] Without that showing, there is no way the Court could conclude that Plaintiffs are likely to succeed on the merits of their claim—"a court may not grant a plaintiff injunctive relief based on claims not pled in the complaint." *Familias Unidas por la Justicia, AFL-CIO v. U.S. Dep't of Lab.*, 795 F. Supp. 3d 1325, 1337 (W.D. Wash. 2025); *see Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797, 807–08 & n.16 (9th Cir. 2025) (assessing likelihood of success with respect to standard for facial challenge despite potential unconstitutional applications).

To be clear, Plaintiffs may seek narrower *relief* in a preliminary injunction motion than the relief ultimately sought. In fact, if the two circumstances Plaintiffs mention in their motion were their "prime concern," they "could have brought an as-applied challenge." *NetChoice, LLC v. Bonta*, 170 F.4th 744, 759–60 (9th Cir. 2026). But they cannot argue in a preliminary injunction motion that they are likely to succeed on a claim they haven't brought. Instead, they must establish that the "full range" of H.B. 752's restroom prohibition is unconstitutional—which they have not tried to do. *Id.*; *see also Moody*, 603 U.S. at 723–26 (rejecting attempt to reframe a facial challenge as as-applied on preliminary injunction posture); *Roe*, 137 F.4th at 924–25 & n.9 ("the outcome here is dictated by the type of challenge SAGA raises"—"[t]hough SAGA's argument focused on restrooms, its complaint plainly challenged S.B. 1100's application to all covered facilities").

---

[6] This is true even if Plaintiffs' claim could be characterized as challenging H.B. 752 "as-applied" to all restrooms. "The label is not what matters. The important point is that plaintiffs' claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs," so "[t]hey must [] satisfy [the] standards for a facial challenge *to the extent of that reach*." *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) (emphasis added).

**B.        H.B. 752 does not trigger heightened scrutiny because it is nondiscriminatory.**

Under either version of Plaintiffs' claim, H.B. 752 does not trigger heightened scrutiny. The Equal Protection Clause subjects to strict scrutiny laws that discriminate on the basis of a suspect class like race and applies intermediate scrutiny to laws that discriminate on the basis of a quasi-suspect class like sex or (under current Ninth Circuit law) transgender status. *Roe*, 137 F.4th at 923; *but see SAGA*, 2025 WL 2256884, at *5 (recognizing that the Supreme Court "will, in all likelihood, address this question once and for all" in *Hecox v. Little* next month). Other laws are subject to rational basis review. *SAGA*, 2025 WL 2256884, at *5. Plaintiffs argue that H.B. 752 entails sex-based and transgender-based discrimination requiring intermediate scrutiny, but they are wrong.

As for sex-based discrimination, H.B. 752 treats both sexes equally. Intermediate scrutiny applies only when laws prescribe "different treatment" for males and females. *Reed v. Reed*, 404 U.S. 71, 75–76 (1971). This occurs when a law "prefer[s] one sex over the other," bestows benefits or burdens on one sex but not the other, or applies one rule for men and a different one for women. *L.W. v. Skrmetti*, 83 F.4th 460, 480 (6th Cir. 2023) (collecting many examples), *aff'd sub nom. United States v. Skrmetti*, 605 U.S. 495 (2025); *Anderson v. Crouch*, 169 F.4th 474, 483 (4th Cir. 2026) (the Supreme Court has said "[o]ver and over" that facial classifications are those that "explicitly identify sex as the basis for favorable or unfavorable treatment"). However, H.B. 752 prescribes the *same* treatment for both men and women—neither may enter a bathroom designated for the other sex.

As for transgender-based discrimination, applying H.B. 752 does not depend on whether the individual identifies as transgender. *No person* may enter a bathroom designated for the opposite biological sex, irrespective of gender identity. Perhaps most people who want to enter a bathroom designated for the opposite sex identify as transgender, but "disproportionate impact" doesn't trigger heightened scrutiny. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 260 (1979); *see Jones*, 803 F. Supp. 3d at 1091 n.13 ("the practical reality [is] that laws often draw lines between groups of people,

and those lines may naturally prove advantageous to some groups while disadvantaging others").

Plaintiffs argue that H.B. 752 is subject to intermediate scrutiny based on the Ninth Circuit's opinion in *Roe*. For starters, while *Roe* concluded there was transgender-based discrimination, it did not *hold* anything with respect to sex-based discrimination because the question was not litigated. 137 F.4th at 922. In any event, *Roe* has been overruled by intervening Supreme Court precedent.

In *United States v. Skrmetti*, the Supreme Court addressed a statute prohibiting administration of puberty blockers and cross-sex hormones to "enable a minor to identify with . . . [an] identity inconsistent with the minor's sex." 605 U.S. at 506 (cleaned up). The Court rejected the claim of sex-based discrimination, explaining that the statute's "mere reference to sex" did not trigger heightened scrutiny, which is not appropriate in contexts "uniquely bound up in sex." *Id.* at 512. The Court also found no transgender-based discrimination because the statute's operation did not "exclude any individual from medical treatments on the basis of transgender status"—those of all gender identities were excluded, even if "only transgender individuals" were affected. *Id.* at 518–19.

*Skrmetti*'s reasoning is "clearly irreconcilable" with *Roe*. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003). *Roe*'s sex-based analysis (to the extent there is any) simply relies on the Fourth Circuit's decision in *Grimm v. Gloucester Cnty. Sch. Bd.*, which reasoned that a similar bathroom policy deserved heightened scrutiny because it could "[ ]not be stated without referencing sex." 972 F.3d 586, 608 (4th Cir. 2020). That is directly contrary to *Skrmetti*'s analysis. *See D.P. by A.B. v. Mukwonago Area Sch. Dist.*, 2025 WL 1794428, at *1 (7th Cir. June 30, 2025) (questioning whether *Whitaker*—which *Grimm* relied on—should be overruled in light of *Skrmetti*). *Roe*'s transgender-based analysis also cannot stand after *Skrmetti*. Even if only transgender individuals are prohibited from "using facilities that align with their gender identity," *Roe*, 137 F.4th at 923, the law operates to exclude, for example, *all* men (transgender or not) from using women's restrooms.

The court in *SAGA* and *Jones* has continued to apply intermediate scrutiny after *Skrmetti*, but the most it has been able to say is that it believes separating bathrooms is "based on sex." *Jones*, 803 F. Supp. 3d at 1090. It has frankly acknowledged that separating bathrooms "does not include any of the hallmarks of sex discrimination"—for example, it does not "prefer one sex over the other." *Roe*, 2023 WL 6690596, at *7 n.11. But what the court fails to appreciate is that "[w]hen a law does not ascribe different benefits and burdens to the sexes, that law does not discriminate based on sex, even if sex factors into the law's application." *Gore v. Lee*, 107 F.4th 548, 556 (6th Cir. 2024) (upholding law prohibiting amendment of sex marker on birth certificate). Sex-discrimination entails unequal treatment, *see Reed*, 404 U.S. at 75–76, and that is entirely missing here.

**C.    H.B. 752 easily survives rational basis review, or even intermediate scrutiny.**

Because it does not discriminate based on sex or transgender status, H.B. 752 is subject only to rational basis review, meaning it is constitutional "so long as there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Skrmetti*, 605 U.S. at 522–23 (cleaned up). There can be no serious dispute that H.B. 752 rationally advances privacy and safety, and these "plausible reasons" mean the "inquiry is at an end." *Id.* at 522 (cleaned up); *see infra*.

But even if H.B. 752 were subject to intermediate scrutiny, it would survive. Intermediate scrutiny requires that a law (1) "serves important governmental objectives" and (2) is "substantially related to the achievement of those objectives." *Virginia*, 518 U.S. at 524 (cleaned up). It does not require the government to employ "the least restrictive means or the means most narrowly tailored to achieve the government's interest." *Roe*, 137 F.4th at 926.

Before assessing the bodily privacy and safety interests advanced by H.B. 752, it is worth pausing to recognize the historical pedigree of sex-separated bathrooms. "Separating restrooms by biological sex has been common for centuries." *SAGA*, 2025 WL 2256884, at *8. They "preceded the nation's founding," W. Burlette Carter, *Sexism in the "Bathroom Debates": How Bathrooms*

*Really Became Separated by Sex*, 37 Yale L. & Pol'y Rev. 227, 229 (2018), and were common at the time the Fourteenth Amendment was ratified. Peter C. Baldwin, *Public Privacy: Restrooms in American Cities, 1869–1932*, 48 J. of Soc. Hist. 264 (2014).

Thus, the notion that sex-separated bathrooms violate the Constitution should be met with serious skepticism. The "standard grounds for constitutional decisionmaking" are "text, history, and precedent," *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 279 (2022), so the fact that a statute is consistent with a "long and consistent historical practice that has been open, widespread, and unchallenged since the early days of the Republic" should be dispositive of its constitutionality. *Dep't of Com. v. New York*, 588 U.S. 752, 754 (2019).

Moreover, because the "legislative judgment" embedded in H.B. 752 is not "novel," the "quantum of empirical evidence" needed to withstand intermediate scrutiny is low. *Roe*, 137 F.4th at 925. H.B. 752 advances the exact same interests that sex-separated restrooms have always sought to foster. *See* Kevin Stuart & DeAnn Barta Stuart, *Behind Closed Doors: Public Restrooms and the Fight for Women's Equality*, 24 Tex. Rev. L. & Pol. 1, 28–37 (2019) (requiring sex-separated restrooms was a victory for women's rights, and thwarted risks of assault and sexual harassment); Ruth Bader Ginsburg, *The Fear of the Equal Rights Amendment*, Wash. Post at A21 (Apr. 7, 1975) ("[s]eparate places to disrobe, sleep, [and] perform personal bodily functions are permitted, in some situations required, by regard for individual privacy").

***Bodily privacy***. The Ninth Circuit has already affirmed Idaho's "important" interests in promoting bodily privacy. *Roe*, 137 F.4th at 923–24. The "right to bodily privacy" is a constitutional right. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). "[S]hield[ing] one's unclothed figure from the view of strangers, and *particularly strangers of the opposite sex*, is impelled by elementary self-respect and personal dignity." *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d

1135, 1141 (9th Cir. 2011) (emphasis added).

H.B. 752 advances this interest by reducing a risk of exposure to members of the opposite sex in restrooms. "[B]athrooms by their very nature implicate important privacy interest[s]" because "the functions of the bathroom are intended to be private." *Id*. at *7 (quoting *Hecox v. Little*, 79 F.4th 1009, 1025 (9th Cir. 2023), *opinion withdrawn*). Indeed, privacy concerns exist regardless of stall doors. Most stalls have gaps allowing those outside the stall to see inside the stall even when the stall door is closed. Stalls also do not provide audial privacy. *See SAGA*, 2025 WL 2256884, at *6 & n.12 (describing incident where student heard a biological male making grunting sounds resembling masturbation in the adjacent stall). "[I]n the male bathrooms, [men] use undivided urinals." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 806 (11th Cir. 2022).

Moreover, "restrooms are not used simply to relieve oneself," and preserving "[p]rivacy is not limited to obscuring the visual line of sight of others when a person is relieving themselves in a restroom stall." *SAGA*, 2025 WL 2256884, at *7–8 (emphasis omitted). "Individuals undertake other personal duties in the communal areas of restrooms and are entitled to privacy there as well." *Jones*, 803 F. Supp. 3d at 1091. For example, "[p]eople often use the common areas of a restroom (as well as a stall) to change [or even adjust] items of clothing or undertake other personal hygiene duties." *SAGA*, 2025 WL 2256884, at *7.

By forbidding entrance into bathrooms designated for the opposite sex, H.B. 752 adds a layer of privacy and ensures that restrooms are places where no individual will be forced to change or undertake other private duties in the presence of someone of the opposite sex.

***Safety***. It is an unfortunate reality that violent crimes have been committed by biological males—both those identifying as transgender and not—against women and adolescents in public

restrooms.[7] *See Jones*, 803 F. Supp. 3d at 1091 & n.12. Requiring everyone to respect restrooms separated by sex is an effective tool to mitigate the risk of crime, especially since places of public accommodation cannot realistically require an individual to present documentation proving they have gender dysphoria (or identify as transgender) before using the restroom. Nangia Decl. ¶¶ 14–19; *see Bridge v. Okla. State Dep't of Educ.*, 711 F. Supp. 3d 1289, 1296–97 (W.D. Okla. 2024) (concluding that gender-neutral multiple-occupancy restrooms pose "major safety concern[s]").

Judge Nye in *SAGA* and *Jones* concluded that safety "was an important interest" and that the sex-segregated bathroom laws there were "related to safety," but that "it [was] not entirely clear on the current record that [the laws] serve[d] this interest through its structure regarding restrooms," *SAGA*, 2025 WL 2256884, at *6–7, due to the lack of evidence that safety incidents "ha[ve] ever happened in Idaho." *Jones*, 803 F. Supp. 3d at 1091. Thus, "safety—standing alone—[did] not carry the day in those cases," and the statutes were upheld based primarily on privacy interests. *SAGA*, 2025 WL 2256884, at *7. But the record regarding H.B. 752 does not share those defects—legislators specifically noted safety risks and incidents that have occurred in Idaho. *See* Background, *supra*.

Regardless, given the growing number of cases of violence against women and children in restrooms across the country, Idaho need not wait until tragedy strikes to act. *Roe*, 137 F.4th at 925 ("harm need not have occurred before a legislature can act"); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51–52 (1986) (locality could "rely on the experiences of . . . other cities").

---

[7] *E.g.*, *In re Commitment of Thedford*, 2023 WL 107121, at *1 (Tex. App. Jan. 5, 2023) (rape); *People v. Waqa*, 309 Cal. Rptr. 3d 633, 640 (Cal. App. Ct. 2023) (rape); *Hart v. Att'y Gen. of Md.*, 2024 WL 4201418, at *2 (D. Md. Sept. 16, 2024) (rape); Briana Oser, *Young Girl is Raped in School Bathroom by Transgender Peer*, Wash. Examiner (June 20, 2023), https://tinyurl.com/3rr237a2 (rape); *State v. Brown*, 164 So. 3d 395, 397 (La. App. Ct. 2015) (attempted forcible rape); *Hutton v. State*, 190 N.E.3d 413, 414 (Ind. Ct. App. 2022) (sexual assault); *Gooden v. Edmond Pub. Schs.*, No. CJ-2023-2959 (Okla. Dist. Ct. Okla. Cnty. May 25, 2023) (assault); *Sexual Predator Jailed After Claiming to Be "Transgender" to Assault Women in Shelter*, LifeSite News (Mar. 4, 2014), https://tinyurl.com/mr3sae68 (assault).

**D.** **Plaintiffs' as-applied-challenge theory is foreclosed by Supreme Court precedent, and meritless in any event.**

Plaintiffs seek to avoid these plainly adequate rationales, the long-standing history of sex-separated bathrooms, and the track record of similar laws being upheld in this Court by myopically focusing the Court's attention on two "narrow circumstances"—(1) single-user restrooms designated for the opposite sex, and (2) "multi-occupancy restrooms where no gender-neutral single-user restroom is reasonably available." Dkt. 3-1 at 8, 13. They argue that H.B. 752 does not "directly advance[ ] the State's legitimate objectives" in those specific situations. Dkt. 3-1 at 14 (quoting *Doe v. Horne*, 115 F.4th 1083, 1110 (9th Cir. 2024)). But precedent forecloses that type of challenge.

As the Supreme Court has explained, "[n]one of [its] gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001) (upholding statute imposing stricter citizenship requirements for those born abroad to citizen fathers than those born to citizen mothers). *Id.* at 56–57. That approach makes sense. If it were true that the Legislature acts unconstitutionally if there is any factual application in which the law does not significantly advance its objective, that would mean the Legislature must *perfectly* tailor its law and implement every possible exception. But perfect tailoring is not required (or, often, even possible)—instead, some overbreadth is allowed, which may "represent trade-offs between equality and practicality." *Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131–32 (9th Cir. 1982). Thus:

- In *Kahn v. Shevin*, the Court upheld a tax exemption for widows, rejecting the view that it could have been drafted "more precisely," 416 U.S. 351, 356 n.10 (1974), by excluding "widows of substantial economic means," *id.* at 360 (Brennan, J., dissenting).

- In *Rostker v. Goldberg*, the Court held that women could be excluded from selective-service registration because, even if "a small number . . . could be drafted for noncombat roles," Congress "did not consider it worth the added burdens." 453 U.S. 57, 81 (1981).

- In *Michael M. v. Superior Ct. of Sonoma Cnty.*, the Court held that a statutory-rape law was substantially related to the goal of reducing teenage pregnancy even though it proscribed "sexual intercourse with prepubescent females, who are, by definition,

incapable of becoming pregnant." 450 U.S. 464, 466, 475 (1981) (plurality). *See also United States v. Edge Broad. Co.*, 509 U.S. 418, 427 (1993) (in First Amendment context, intermediate scrutiny "cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity").

Notwithstanding this, Plaintiffs rely on the Ninth Circuit's opinion in *Doe v. Horne*, 115 F.4th at 1110, as justification for claiming that the law must be justified as to one class of people using two particular bathroom configurations. Dkt. 3-1 at 14. Judge Nye has persuasively explained why *Doe* does not support Plaintiffs' theory. *Jones*, 803 F. Supp. 3d at 1093–95 & n.20 (it "would essentially allow the exceptions to swallow the State's fundamental privacy interest"). But in any event, *Doe* addresses the same sex-based challenge at issue in *Hecox v. Little*—that a law dividing sports by sex allegedly does not advance its interest as applied to males with low testosterone. 115 F.4th at 1110. The Supreme Court will provide additional clarity on this issue in the next month. Transcript of Oral Argument at 72–73, *Little v. Hecox*, No. 24-38 (U.S. Jan. 13, 2026) (Justice Barrett: "It seems like [as-applied challenges are] at war with the theory of intermediate scrutiny for some of the reasons that Idaho said because all lines, all classifications overshoot or undershoot").

Even if the Court were to accept Plaintiffs' justified-in-every-application theory of equal protection, Plaintiffs' argument would *still* fail because H.B. 752 does advance its bodily privacy and safety objectives in the two circumstances identified by Plaintiffs.

As for multi-occupancy restrooms where no gender-neutral single-user restroom is reasonably available, Idaho's interests are advanced in the *exact* same way as multi-occupancy restrooms where a gender-neutral single-user restroom is available. *See supra*, Part II.C. Plaintiffs argue that the resulting discomfort to *them* is heightened when there is no single-user alternative, but intermediate scrutiny does not balance distinct competing interests. Rather, as *Roe* made clear, the judicial inquiry is "limited to deciding whether [the law] is substantially related to the State's

interest"—the Court does not "decide whether the legislative action is substantively good policy" or whether the State has used "the least restrictive means or the means most narrowly tailored to achieve the government's interest." 137 F.4th at 925–26. Thus, the State was not required to dictate that all public places build or establish new single-occupancy restrooms. *Clark*, 695 F.2d at 1131–32.

As for single-user restrooms designated for the opposite sex, H.B. 752 still serves bodily privacy interests. First, since restroom door locks can fail or users may inadvertently forget to use them, there is still a risk "one's unclothed figure" will be exposed to "strangers of the opposite sex" that is avoided by sex-separated single-user restrooms. *Byrd*, 629 F.3d at 1141. Second, when both sexes share a bathroom space, there is an increased risk of hidden cameras and voyeurism. *See* Skyler Shepard, *Hidden Cameras in Shared Bathroom Lead to 58 Video Voyeurism Counts in Palm Beach County*, CBS 12 News, (Feb. 3, 2025), https://tinyurl.com/4n3awhky. And third, the "more general privacy concerns" associated with the "personal bodily functions and duties [that] take place in restrooms"—including exposing subsequent users to smells associated with defecation or menstruation—are heightened when subsequent users are of the opposite sex. *SAGA*, 2025 WL 2256884, at *8. Thus, when a place of public accommodation designates a higher level of sex-specific privacy in single-user restrooms, H.B. 752 reasonably requires compliance.

### E.      H.B. 752 is not the product of animus.

Finally, Plaintiffs argue that—independent of the intermediate scrutiny analysis—H.B. 752 is invalid because it is the product of animus towards those who identify as transgender. Not so.

Plaintiffs' lead theory is that animus can be presumed under *Romer v. Evans* based on H.B. 752's breadth. 517 U.S. 620, 632 (1996). But to presume animus, the Court must conclude that the law is objectively "inexplicable by anything but animus." *Id.*; *Trump v. Hawaii*, 585 U.S. 667, 705 (2018) (law must "lack any purpose other than a bare desire to harm a politically unpopular group") (cleaned up). And as discussed above, H.B. 752 can be easily explained—it directly advances

judicially recognized interests in privacy and safety in the way that has been done for centuries. Plaintiffs object that H.B. 752 does not force businesses to make "individual restrooms" available or make "reasonable accommodations." Dkt. 3-1 at 18. But (1) narrow tailoring is not required, and (2) there are legitimate reasons not to impose such requirements—not all businesses have separate "individual restrooms" or the money to build them, and requiring each business to discuss restroom accommodations with any patron is impractical. *See also* Considine Decl. ¶¶ 2f, 3b, 4f (noting the recent "proliferation of single use bathrooms," reducing concerns about needing accommodations).

Plaintiffs also invite the Court to search for animus within the Legislature's subjective motives for enacting H.B. 752. Such arguments have "long [been] disfavored" because "inquiries into legislative motives are a hazardous matter," and statements by one legislator cannot be "attribute[d] . . . to the legislative body as a whole." *Moving Oxnard Forward, Inc. v. Lopez*, 173 F.4th 1070, 1087 (9th Cir. 2026) (cleaned up). But the legislative history readily establishes that the Legislature enacted H.B. 752 for its protection of bodily privacy and safety—"in spite of," not "because of," "its adverse effects" on those who identify as transgender. *Feeney*, 442 U.S. at 279.[8]

Plaintiffs may lament that the Legislature prioritized others' bodily privacy over affirming their gender identity, but it's unavoidable that those two interests will clash in the bathroom context, *see* Nangia Decl. ¶¶ 14–19, and the Constitution leaves the choice of which interest to prioritize to the Legislature. Preferring one policy to another is not animus towards anyone, but simply an inevitable occurrence in our democracy. *See Skrmetti*, 605 U.S. at 523 (rejecting animus).

---

[8] *See* Background, *supra*; Considine Decl. ¶¶ 5a ("[M]y intent is in no way to be unkind, or to hurt anyone . . . I am actually thankful that there is a proliferation of single use restrooms, which I think is a very real solution to people who might be affected by this legislation and might be uncomfortable . . . All of what we're trying to solve here is not targeting any one group of people or any one person. It's dealing with sexual predators and very real issues."), 5b (although "it might make it uncomfortable for certain types of people to use the bathroom," "[t]his bill doesn't say people can't use the bathroom, this bill says men cannot invade women's spaces"); 3b, 5c.

### III.    H.B. 752 does not infringe any right to informational privacy.

Finally, Plaintiffs have not shown a likelihood of success on their substantive due process "informational privacy" claim. That purported right loosely derives from two cases from 1977. *Whalen v. Roe*, 429 U.S. 589 (1977); *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977). Since then, the Supreme Court "has said little else on the subject"—the only other time it analyzed the right, it seriously questioned whether the right exists at all. *NASA v. Nelson*, 562 U.S. 134, 144–47 & n.10 (2011). The Ninth Circuit has previously recognized the right, *Doe v. Att'y Gen. of U.S.*, 941 F.2d 780, 795 (9th Cir. 1991), but the right's dubious constitutional grounding cautions strongly against extending it to a new context like this to enjoin a state law. *See United States v. Rahimi*, 602 U.S. 680, 730 (2024) (Kavanaugh, J., concurring) (constitutional "text and history" serve as "a gravitational pull on the Court's interpretation of precedent"); *see* Dkt. 3-1 at 19–21 (citing no cases applying the right in the context of bathroom usage).

Plaintiffs' theory is that their right to informational privacy is violated by H.B. 752 because it "disclose[s] their transgender status"—they fear others will observe them entering a bathroom designated for their sex, will deduce their sex, and will then deduce their transgender status. Dkt. 3-1 at 19. Plaintiffs raise their argument only as to the two specific circumstances discussed above, *id.*, and their attempt to limit the Court's focus to these circumstances suffers from the same flaws discussed above—namely, they did not plead any claim applied to these circumstances and the proper inquiry into the State's interest cannot be so limited. *See* Part II.A, II.C, *supra*; Dkt. 1 ¶¶ 166, 170; *Nelson*, 562 U.S. at 152 ("reject[ing] the argument" that compelled disclosure must be "necessary or the least restrictive means of furthering [the State's] interest"—a law cannot "be held unconstitutional simply because a court viewed it as unnecessary, in whole or in part") (cleaned up).

Still, even on its own merits, Plaintiffs' theory suffers from at least three fatal flaws.

*First*, H.B. 752 does not compel disclosure of transgender identity. To the extent it forces

*any* disclosure, it allows onlookers to reasonably predict only an individual's *sex*.[9] But an onlooker would not be able to infer that an individual identifies as transgender unless they separately knew the individual's gender identity. H.B. 752 does not "disclose[ ] or force [Plaintiffs] to disclose their gender identity." *Gore*, 107 F.4th at 564 (rejecting similar argument).

Thus, to the extent anyone can infer that Plaintiffs identify as transgender after seeing them enter a restroom corresponding to their sex, it would only be because *Plaintiffs* have divulged their gender identity. There is no other way for anyone to know—Plaintiffs allege that gender identity is "a person's *internal* sense of oneself." Dkt. 1 ¶ 39 (emphasis added). Plaintiffs suggest that onlookers might surmise their gender identity based on the way they "live[ ], dress[ ], and express[ ]" themselves. Dkt. 3-1 at 20. But gender identity cannot reliably be inferred from such indicators— many people who identify as transgender do not dress in opposite-sex clothing, and some who do not identify as transgender occasionally do. *Is Drag the Same as Transgender?*, Planned Parenthood (Oct. 13, 2025), perma.cc/2F6U-AW57.[10] In all events, Plaintiffs cannot blame H.B. 752 because it "does not disclose any mismatch [between sex and] their gender identity." *Gore*, 107 F.4th at 564.

*Second*, the right to informational privacy does not include the right to keep one's transgender identity a secret. In substantive due process cases, the key inquiry when examining the existence and scope of a constitutional right is whether the right is "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). "And in conducting this inquiry, [the Court] must engage in a careful analysis of the history of the right at issue." *Reach Cmty. Dev. v. U.S. Dep't of Homeland Sec.*, 2026 WL 1133351,

---

[9] Plaintiffs admit that not all who identify as transgender "have a physical appearance consistent with their gender identity." Dkt. 3-1 at 17. In such cases, a person's sex is likely not private information that adherence with H.B. 752 would disclose.

[10] Where individuals identify as non-binary, disclosing their sex certainly adds nothing—since sex is binary, a non-binary gender identity would of necessity imply transgender status.

at *2 (9th Cir. Apr. 27, 2026) (cleaned up). Long gone are the days of shaping an abstract "right to privacy" through "freewheeling judicial policymaking." *Dobbs*, 597 U.S. at 235, 240.

Here, Plaintiffs cannot argue—indeed, do not even try to argue—that a right to conceal one's transgender identity is deeply rooted in this Nation's history and tradition. Indeed, those who ratified the Fourteenth Amendment would have been baffled at the very "concept of 'gender identity,'" which "did not enter the English lexicon until the 1960s." *Gore*, 107 F.4th at 562; Alison Li, *Harry Benjamin and the Birth of Transgender Medicine*, Canadian Med. Ass'n J. (Dec. 11, 2023), https://tinyurl.com/4bv2rw2m ("transsexual" literature was not popularized until 1966). The ubiquity of sex-separated bathrooms when the Fourteenth Amendment was ratified also dispels the notion that it protects a right to keep private any information disclosed by entering a restroom designated for one's sex. Peter C. Baldwin, *supra*; *Gore*, 107 F.4th at 562 (relying on history).

Judge Nye rejected an identical informational privacy claim on this ground. *Roe*, 2023 WL 6690596, at *15–16. This Court should do likewise.

*Third*, even if Plaintiffs had an informational privacy right to keep secret their transgender identity secret, that right is "not absolute." *In re Crawford*, 194 F.3d 954, 959 (9th Cir. 1999). Rather, the right protects only against "*unwarranted* disclosures and *undue* dissemination of personal information." *Nelson*, 562 U.S. at 157 (cleaned up); *Katz v. United States*, 389 U.S. 347, 350 n.5 (1967) ("Virtually every governmental action interferes with personal privacy to some degree."). Thus, the right "is a conditional right which may be infringed upon a showing of proper governmental interest." *Crawford*, 194 F.3d at 959 (cleaned up). Here, the same privacy and safety interests that justify H.B. 752 for equal protection purposes justify requiring any disclosure of information that occurs when someone enters a sex-separated restroom. *See* Part II.C, D, *supra*.

## IV. The remaining preliminary injunction factors weigh against an injunction.

Although the Court "need not consider the other factors" in light of Plaintiffs' unlikelihood

of success on the merits, they weigh against a preliminary injunction. *Baird*, 81 F.4th at 1040.

Plaintiffs argue they will be irreparably harmed because H.B. 752 will (1) infringe on their constitutional rights, (2) cause them "increase[d]" "levels of gender dysphoria, harming their mental health," (3) cause them to "out themselves to strangers in public," and (4) subject them to violence or harassment. Dkt. 3-1 at 21–22. The first argument fails for the reasons explained above. The second fails because there is no quality medical evidence to show that Plaintiffs will suffer negative mental health outcomes if they are required to use restrooms that correspond to their sex. Nangia Decl. ¶ 8. It is unlikely the third alleged harm will be incurred by all Plaintiffs or putative class members—some are already "out" or have presented no evidence others do not know they identify as transgender, *e.g.*, Wagner Decl. ¶ 8, or are openly using their name in this case. And there is no evidence the fourth harm is likely to occur. *Winter*, 555 U.S. at 22 (plaintiff must show more than a "possibility" of irreparable harm; he must "demonstrate that irreparable injury is *likely*").

Moreover, while Plaintiffs claim harm if they are *not* allowed to use restrooms designated for the opposite sex, they fail to acknowledge the reciprocal harms to the bodily privacy interests of those who—in contravention of their constitutional right to bodily privacy—are "forced to change (or undertake other private duties) in the presence of someone of the opposite sex" if Plaintiffs *are* allowed to such restrooms. *Roe*, 2023 WL 6690596, at *10. Medical evidence supports this harm, Nangia Decl. ¶¶ 14–19, and it is the very harm the Legislature sought to prevent. To that point, the equities and public interest also tip in Defendants' favor because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

## CONCLUSION

For the forgoing reasons, this Court should deny Plaintiffs' motion.

ATTORNEY GENERAL'S RESPONSE TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION [DKT. 3]—25

DATED: May 21, 2026

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *Michael A. Zarian*
MICHAEL A. ZARIAN
Solicitor General

*Attorney for Defendants Labrador and*
*43 of the 44 County Prosecutors*

<u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT on May 21, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| ACLU OF IDAHO FOUNDATION<br>P.O. Box 1897<br>Boise, ID 83701<br>(208) 344-9750<br><br>Emily Croston<br>ecroston@acluidaho.org<br><br>Paul Southwick<br>psouthwick@acluidaho.org<br><br>*Attorneys for Plaintiffs* | ALTURAS LAW GROUP, PLLC<br>111 N 1st Avenue, Suite 2I, PO Box 2975<br>Hailey, ID 83333<br>(208) 788-6688<br><br>Samuel L. Linnet<br>sam@alturaslawgroup.com<br><br>*Attorney for Plaintiffs* |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>915 15th Street N.W.<br>Washington, DC 20005<br><br>Barbara Schwabauer<br>bschwabauer@aclu.org<br><br>Eleanor Matheson<br>ematheson@aclu.org<br><br>*Attorneys for Plaintiffs* | LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>800 South Figueroa St., Suite 1260<br>Los Angeles, CA 90017<br><br>Peter C. Renn<br>prenn@lambdalegal.org<br>Kell L. Olson<br>kolson@lambdalegal.org<br>Tara L. Borelli<br>tborelli@lambdalegal.org<br>Pelecanos<br>pelecanos@lambdalegal.org<br>A.D. Sean Lewis<br>alewis@lambdalegal.org<br>Charlie Ferguson<br>cferguson@lambdalegal.org<br><br>*Attorneys for Plaintiffs* |

| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2500<br><br>Chase Strangio<br>cstrangio@aclu.org<br><br>*Attorney for Plaintiffs*<br><br>MUNGER TOLLES & OLSON LLP<br>350 South Grand Ave., 50th Fl.<br>Los Angeles, CA 90071-3426<br><br>Katherine M. Forster<br>katherine.forster@mto.com<br>Kyle A. Groves<br>kyle.groves@mto.com<br>Jannet Gomez<br>jannet.gomez@mto.com<br><br>*Attorneys for Plaintiffs* | MUNGER TOLLES & OLSON LLP<br>560 Mission Street, 27th Fl.<br>San Francisco, CA 94105-2907<br><br>J. Max Rosen<br>max.rosen@mto.com<br>Qian Zhe (Danny) Zhang<br>danny.zhang@mto.com<br><br>*Attorneys for Plaintiffs* |
|---|---|

/s/ *Michael A. Zarian*
MICHAEL A. ZARIAN