RAÚL R. LABRADOR
ATTORNEY GENERAL

MICHAEL A. ZARIAN, ISB #12418
Solicitor General

JAMES E. M. CRAIG, ISB #6365
Chief, Civil Litigation and
Constitutional Defense

DAVID J. MYERS, ISB #6528
Deputy Attorney General
Office of the Attorney General
P.O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
michael.zarian@ag.idaho.gov
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov

*Attorneys for Defendants Labrador and
43 or the 44 County Prosecutors*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILIE JACKSON-EDNEY, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, *et al*., <br><br> *Defendants*. | Case No. 1:26-cv-00261-AKB <br><br> **RESPONSE TO MOTION FOR CLASS CERTIFICATION [DKT. 4]** |

**INTRODUCTION**

Plaintiffs, three males and three females, all between the ages of 30 years old and 77 years old (Dkt. 1 at ¶¶ 10, 14, 18, 22, 27, 31), request both provisional and full class certification under Fed. R. Civ. P. 23(a) and 23(b)(2) to enjoin H.B. 752's enforcement as to "all transgender people who seek to use a restroom" of the opposite sex. Dkt. 4-1 at 8. But the proposed class fails to meet the rigorous requirements of Rule 23(a) and 23(b)(2). Plaintiffs' proposed class is overbroad and unascertainable—including, among others, minors of any age; out-of-state travelers; those with a medical diagnosis of gender dysphoria and those without; those who dress and attempt to alter their appearances to appear as if they are members of the opposite sex along with those who do not attempt to appear as if they are members of the opposite sex; those who have received cross-sex medical treatments and thus "may have some biological characteristics consistent with their sex assigned at birth but have other sex characteristics that are not" (Dkt. 1 at ¶ 42) along with those who have not received such treatments; and those who may identify with an unknown number of "genders" other than male or female and not represented by the class members.[1] As a result of this fundamental flaw, Plaintiffs cannot show commonality or typicality, they cannot fairly and adequately protect the interests of the class, and the class does not meet the requirements under Rule 23(b).

---

[1] Plaintiffs define a "transgender person" as "someone who has a gender identity that differs from their sex assigned at birth." Dkt. 1 ¶ 41. The DSM-5, in its discussion of Gender Dysphoria, provides: "*Gender identity* is a category of social identity and refers to an individual's identification as male, female, some category in between (i.e., *gender fluid*), or a category other than male or female (i.e., *gender neutral*). There has been a proliferation of gender identities in recent years." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 511 (5th Ed. Text Revision 2022) (DSM-5) (italics in original).

## LEGAL STANDARD

A plaintiff who seeks provisional class certification must meet the same threshold requirements as if seeking full class certification. *See*, e.g., *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (plaintiff "has the burden of meeting the threshold requirements of FRCP 23(a)").

Under Fed. R. Civ. P. 23(a) there are four threshold requirements for class certification: "numerosity, commonality, typicality, and adequate representation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The Rule 23 requirements are not "mere pleading" requirements; the plaintiff must "affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 350. "The [Supreme Court] requires district courts to engage in a 'rigorous analysis' of each Rule 23(a) factor when determining" if plaintiffs seeking class certification have met their burden. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) (quoting *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Further, class certification should not be used as a "substitute for universal injunctions." *See Trump v. CASA, Inc.*, 606 U.S. 831, 867–68 (2025) ("[t]he class action is a powerful tool, and we have accordingly held that class 'certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied'") (quoting *Dukes*, 564 U.S. at 350–51).

Rule 23(b)(2) "applies when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Dukes*, 564 U.S. at 345–46 (quoting Fed. R. Civ. P. 23(b)(2)).

I.      **The proposed class lacks commonality under Rule 23(a).**

Commonality requires "a plaintiff to show that there are questions of law or fact common to the class." *Dukes*, 564 U.S. at 349. This requirement is not easy to satisfy because "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the *same injury* … not [] merely that they have all suffered a violation of the same provision of law." *Id.* at 349–50 (cleaned up) (emphasis added). Rather, Plaintiffs' claims must be based on a "common contention" that is "of such a nature that it is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*.

Plaintiffs argue commonality based on shared legal questions (vagueness, equal protection, informational privacy) and factual issues (Plaintiffs are transgender and use opposite sex restrooms). Dkt. 4-1 at 16–17. Plaintiffs ignore, however, the extraordinary diversity of the undefined class. Plaintiffs ask the Court to certify a class of "all transgender people who seek to use a restroom in a government owned building or place of public accommodation in Idaho consistent with their gender identity." Dkt. 4-1 at 8. Plaintiffs define a "transgender person" as "someone who has a gender identity that differs from their sex assigned at birth." Dkt. 1 ¶ 41. "*Gender identity* is a category of social identity and refers to an individual's identification as male, female, some category in between (i.e., *gender fluid*), or a category other than male or female (i.e., *gender neutral*)." DSM-5 at 511 (italics in original).

Based on Plaintiffs' definition, the proposed class includes all of the following, and more:

- Transgender persons with a medical diagnosis of gender dysphoria;
- Transgender persons who merely self-identify as "transgender" at any given time without a medical diagnosis of gender dysphoria;

- Transgender persons who have received the full panoply of cross-sex medical treatment (puberty blockers, cross-sex hormones, surgery to remove or add body parts, mental health treatment, etc.);

- Transgender persons who have received only some cross-sex medical treatments;

- Transgender persons who have received no cross-sex medical treatments;

- Transgender persons who have socially transitioned;

- Transgender persons who have not socially transitioned;

- Transgender persons who "pass" as the opposite sex;

- Transgender persons who don't "pass" as the opposite sex;

- Transgender persons whose gender identity has been stable for a long period of time;

- Transgender persons whose gender identity is undetermined;

- Transgender persons whose gender identity is nonbinary;

- Transgender persons whose gender identity is fluid, and with differing duration;

- Transgender persons who identify with any of at least 72 other gender identities, including many non-binary ones. Shaziya Allarakha, *What are the 72 Other Genders?*, Med. Net (medically reviewed Feb. 9, 2024), perma.cc/W9WH-R26F;

- All of the above with differing gender expressions; and

- All of the above, but in minors of any age.

This amorphousness about the members of the class shows the impossibility of the class meeting the commonality requirement. For example, the International Building Code that most public buildings in the State must follow *requires* that "separate facilities shall be provided for each sex" and that "public facilities shall be provided with signs that designate the sex." Int'l Bldg. Code

ch. 29, §§ 2902.2, 2902.4 (2018), https://tinyurl.com/4h22pc2t; *see* IDAPA 24.39.30.600 (adopting the International Building Code). With only two sexes, there is no commonality between Plaintiffs and those whose gender identity aligns with one or more of the other 72 gender identities, *see* Allarakha, *supra*—but with restrooms designated only for males, or females, or gender neutral, there is never a restroom designated for those other 72 gender identities.

Plaintiffs and the proposed class representatives differ in at least two more significant respects. *First*, all Plaintiffs have undertaken some form of hormone treatment or surgery, or both. *See generally* Dkts. 3-4, 3-5, 3-6, 3-7, 3-8, 3-9. But Plaintiffs have not "affirmatively demonstrated" that all members of the proposed class have likewise undertaken hormone treatment or surgery. *Dukes*, 564 U.S. at 350. Thus, Plaintiffs have not met their burden of showing that their situation is the same as members of the proposed class who, while transgender, have not taken any cross-sex hormones or undergone any type of surgery.

*Second*, Plaintiffs and the proposed class members differ widely in age. This is particularly important because there is no medical evidence to support the proposition that allowing any member of the proposed class with gender incongruence or gender dysphoria to use restrooms aligning with their gender identity has positive effects on their mental health. Nangia Decl. ¶ 8. But when it comes to adolescents with gender incongruence or gender dysphoria (members of the proposed class), such policies could have "harmful" and "irreversible consequences." Nangia Decl. ¶¶ 9-11. And so, the alleged harms and injuries suffered by Plaintiffs are not the same as for minors with gender dysphoria.

Plaintiffs' informational privacy claim increases the likelihood of individualized inquiries because not all transgender persons have the same privacy interest at play. *First*, different class members will have different levels of access to single-occupancy restrooms, with consequently

varying likelihood of being "outed" or experiencing physical discomfort. *Second*, class members presumably display varying levels of alignment between their appearance and their sex (naturally or due to their "expression"), potentially resulting in more or less ease in using sex-aligned restrooms. *Third*, with respect to "outing" oneself, transgender individuals traveling through Idaho will not "out" themselves to friends or other associates like those who would use the restroom at work or other places of public accommodation. *Finally*, some transgender persons are not concerned with others knowing that they are transgender, while others are concerned about that information being exposed. These differences in privacy-related factors also defeat commonality.

These simple examples show that some or all of these diverse categories may lead to varying legal analyses under H.B. 752. This diversity in the class members also requires individualized inquiries that undermine Plaintiffs' claim of a common injury that is resolvable class wide. While all putative class members may be affected by the same law, they have not all suffered the same injury. Therefore, commonality is not satisfied.

## II.     The named representatives' claims are not typical under Rule 23(a)(3).

Again, the varied categories and personal circumstances of the putative class members undermine Plaintiffs' attempt to meet the typicality requirement of Rule 23(a)(3). Typicality requires a showing that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The commonality and typicality factors "tend to merge." *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982). But the purpose of typicality is to ensure that "the interest of the named representatives aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. (cleaned up).

Plaintiffs claim typicality because the named representatives share the same alleged injury. Dkt. 4-1 at 17. Yet, their varied categories and personal circumstances may subject them to unique defenses or eligibility under H.B. 752. As with the commonality discussion above, the alleged injury to transgender persons who have undergone surgery or taken cross-sex hormones to alter their appearance may be different than an alleged injury to a transgender person who has not taken those steps. Similarly, the alleged injury to transgender persons who have socially transitioned may be different than the alleged injury to those who have not socially transitioned, or for transgender persons who are not concerned with others knowing that they are transgender versus those who are. Not to mention whatever alleged injury there is to transgender persons who identify with any of the 72 other gender identities besides male or female.

"[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Dukes*, 564 U.S. at 348–49. Given the extremely broad definition proposed by the Plaintiffs, it is impossible for the Court to conclude that their claimed injury or defenses are typical of all of the class members. The Ninth Circuit has denied typicality where unique defenses applied. *See Hanon*, 976 F.2d at 508. Plaintiffs have failed to meet the typicality requirement.

III. **The named representatives cannot fairly and adequately protect the interests of the class.**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is meant to "uncover conflicts of interest" between class members and the representatives to determine whether the named representatives and class counsel will "prosecute the action vigorously on behalf of the class." *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1050 (D. Idaho 2025) (quoting *Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023)).

Plaintiffs cannot meet this burden. Plaintiffs' motion assumes that every transgender person (however defined) will want to use multi-occupancy restrooms designated for members of the opposite sex *and* that every transgender person wants members of the opposite sex to be able access the restroom that they use. But they have presented no evidence to back up that assumption. Plaintiffs cite to the risk of violence and harassment of class members, Dkt. 4-1 at 11, but that risk also applies to those who use restrooms consistent with their biological sex when members of the opposite sex (including those who are not transgender) have access to restrooms and changing rooms designated for members of the opposite sex. For example, a transgender person who has not socially transitioned and who has not taken any cross-sex hormones or undergone any type of surgery, and who regularly uses restrooms consistent with that transgender person's biological sex, may not want members of the opposite sex to have access to a restroom designated for the opposite sex. That transgender person may want a safe place to undergo the personal activities that take place in a restroom or changing room without having to worry about whether a member of the opposite sex has access to that safe space. Nangia Decl. ¶¶ 15–18.

Similarly, a minor transgender individual will very possibly be *harmed* by being able to use a restroom inconsistent with that minor's biological sex. *Id.* ¶¶ 9–11. Further, that minor may also be harmed by being forced to share a restroom or changing room with members of the opposite sex. *Id.* ¶¶ 15–18. This creates a direct conflict with the *adult* plaintiffs who are asking this court to give them a right to use a restroom that would potentially put them in conflict with a transgender minor who is using restrooms consistent with the minor's biological sex.

The Court is required to undertake a "rigorous analysis" to ensure that the elements are met. *Wal-Mart*, 564 U.S. at 351. Plaintiffs' underlying assumption, without any evidence—that every member of the alleged ten-thousand-plus-person class (Dkt. 4-1 at 15) wants exactly what

the six named Plaintiffs want—is unreasonable. Plaintiffs assert that "the named plaintiffs who will lose access to restrooms that align with their gender identity seek appointment as class representatives" without recognizing that if they succeed, everyone in the state of Idaho, including other class members, will lose access to restrooms and changing rooms that are free of members of the opposite sex, to *their* harm. This risk of a conflict of interest between these six named plaintiffs and other members of the class, including those who may not want the same relief sought by these named plaintiffs, is too great. Plaintiffs have failed to show the absence of a conflict of interest with other members of the class.

## CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' motion for provisional class certification.

DATED: May 21, 2026

<div style="margin-left:40%;">

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL


/s/ *David J. Myers*
DAVID J. MYERS
Deputy Attorney General

*Attorney for Defendants Labrador and*
*43 of the 44 County Prosecutors*

</div>

CERTIFICATE OF SERVICE

     I HEREBY CERTIFY THAT on May 21, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

| | |
|---|---|
| ACLU OF IDAHO FOUNDATION<br>P.O. Box 1897<br>Boise, ID 83701<br>(208) 344-9750<br><br>Emily Croston<br>ecroston@acluidaho.org<br><br>Paul Southwick<br>psouthwick@acluidaho.org<br><br>*Attorneys for Plaintiffs* | ALTURAS LAW GROUP, PLLC<br>111 N 1st Avenue, Suite 2I, PO Box 2975<br>Hailey, ID 83333<br>(208) 788-6688<br><br>Samuel L. Linnet<br>sam@alturaslawgroup.com<br><br>*Attorney for Plaintiffs* |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>915 15th Street N.W.<br>Washington, DC 20005<br><br>Barbara Schwabauer<br>bschwabauer@aclu.org<br><br>Eleanor Matheson<br>ematheson@aclu.org<br><br>*Attorneys for Plaintiffs* | LAMBDA LEGAL DEFENSE AND EDUCATION FUND, INC.<br>800 South Figueroa St., Suite 1260<br>Los Angeles, CA 90017<br><br>Peter C. Renn<br>prenn@lambdalegal.org<br>Kell L. Olson<br>kolson@lambdalegal.org<br>Tara L. Borelli<br>tborelli@lambdalegal.org<br>Pelecanos<br>pelecanos@lambdalegal.org<br>A.D. Sean Lewis<br>alewis@lambdalegal.org<br>Charlie Ferguson<br>cferguson@lambdalegal.org<br><br>*Attorneys for Plaintiffs* |

RESPONSE TO MOTION FOR CLASS CERTIFICATION [DKT. 4]—10

| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2500<br><br>Chase Strangio<br>cstrangio@aclu.org<br><br>*Attorney for Plaintiffs*<br><br>MUNGER TOLLES & OLSON LLP<br>350 South Grand Ave., 50th Fl.<br>Los Angeles, CA 90071-3426<br><br>Katherine M. Forster<br>katherine.forster@mto.com<br>Kyle A. Groves<br>kyle.groves@mto.com<br>Jannet Gomez<br>jannet.gomez@mto.com<br><br>*Attorneys for Plaintiffs* | MUNGER TOLLES & OLSON LLP<br>560 Mission Street, 27th Fl.<br>San Francisco, CA 94105-2907<br><br>J. Max Rosen<br>max.rosen@mto.com<br>Qian Zhe (Danny) Zhang<br>danny.zhang@mto.com<br><br>*Attorneys for Plaintiffs* |
|---|---|

/s/ *David J. Myers*
DAVID J. MYERS