UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EMILIE JACKSON-EDNEY, et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>RAÚL LABRADOR, in his official capacity as Attorney General of the State of Idaho, et al.,<br><br>     Defendants. | Case No. 1:26-cv-000261-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction and Provisional Class Certification (Dkt. 3), Motion for Class Certification (Dkt. 4), and Plaintiffs Daniel Doe and Peter Poe's Motion for Leave to Proceed Under Pseudonym (Dkt. 5). Plaintiffs seek injunctive relief relating to the enforcement of House Bill 752 (H.B. 752) as to the named Plaintiffs and putative class members (Dkt. 3 at 3). Defendants include Idaho Attorney General Raúl Labrador and the elected prosecuting attorneys for Idaho's forty-four counties (Dkt. 1). The Court held oral argument on the preliminary injunction motion on June 5, 2026 (Dkt. 55). For the reasons discussed below, the Court grants Plaintiffs' motions.

## I.    BACKGROUND

In response to H.B. 752's passage, Plaintiffs filed this action on April 29, 2026, asserting claims under 42 U.S.C. § 1983 for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, including a void-for-vagueness challenge and a claim for infringement of Plaintiffs' right to informational privacy (Dkt. 1 ¶¶ 141–66).That same day, Plaintiffs filed a motion for injunctive relief requesting to enjoin H.B. 752's enforcement as

**MEMORANDUM DECISION AND ORDER – 1**

applied to Plaintiffs' use of a restroom under narrow circumstances (Dkt. 3 at 3). They also moved for class certification (Dkt. 4) and for two Plaintiffs to proceed under pseudonym (Dkt. 5).

## II.   LEGAL STANDARD

### A.   Standing

At the preliminary injunction stage, plaintiffs "must make a clear showing of each element of standing," proving (1) an injury in fact, (2) traceability, and (3) redressability. *Townley v. Miller*, 722 F.3d 1128, 1133 (9th Cir. 2013); *see Yazzie v. Hobbs*, 977 F.3d 964, 966 (9th Cir. 2020). Pre-enforcement injury, however, "is a special subset of injury-in-fact" because "[f]or pre-enforcement plaintiffs, the injury is the anticipated enforcement of the challenged statute in the future." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024). Accordingly, to establish pre-enforcement standing, plaintiffs must show that: (1) they intend "to engage in a course of conduct arguably affected with a constitutional interest"; (2) the intended future conduct is arguably proscribed by the challenged statute; and (3) "the threat of future enforcement is substantial." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014). The burden of establishing standing is on the party invoking federal jurisdiction. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010).

### B.   Preliminary Injunction

Under Rule 65, a party may obtain injunctive relief before a final judgment in certain limited circumstances. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Ordinarily, preliminary injunctions may go no further than necessary to provide interim relief to the parties, and any equitable remedy must not be more burdensome to the defendant than necessary to redress the plaintiff's injuries. *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., concurring).

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits; he is likely to suffer irreparable harm in the absence of preliminary relief; the balance of equities tips in his favor; and an injunction is in the public interest. *Winter*, 555 U.S. at 20. The movant must carry this burden "by a clear showing." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24. When the government is a party, the factors regarding public interest and equities merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

The Court may apply a "sliding scale" standard, "allowing a stronger showing of one element to offset a weaker showing of another." *Doe v. Snyder*, 28 F.4th 103, 111 (9th Cir. 2022) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011)). Under this approach, "serious questions going to the merits" and a hardship balance that "tips sharply toward the plaintiff can support issuance of an injunction." *Alliance for the Wild Rockies*, 632 F.3d at 1132; *see also N.D. v. Reykdal*, 102 F.4th 982, 992 (9th Cir. 2024). A "serious question" is one that "cannot be resolved one way or the other at the hearing on the injunction because [it requires] more deliberative investigation." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

A plaintiff's ability to demonstrate a likelihood of success on the merits is the most important factor in determining whether a preliminary injunction should issue. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). "[O]nce the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." *Id.*

**C.      Provisional Class Certification**

A trial court has broad discretion regarding whether to grant a motion for class certification. *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010). Courts routinely grant provisional class certification for purposes of entering injunctive relief. *Meyer v. Portfolio Recovery Assocs., L.L.C.*, 707 F.3d 1036, 1041–43 (9th Cir. 2012) (affirming provisional class certification for purposes of a preliminary injunction); *Al Otro Lado v. Wolf*, 952 F.3d 999, 1005 (9th Cir. 2020) (same).

One or more members of a proposed class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23; *see Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018). A district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). This "rigorous" evaluation, however, is not a mini-trial. *Sali*, 909 F.3d at 1004. "A district court need only consider material sufficient to form a reasonable judgment on each [Rule 23] requirement," and "[t]he court's consideration is not limited to only admissible evidence." *Id.* at 1005.

If Rule 23(a) is satisfied, then a class action may be maintained under Rule 23(b)(2) if the party opposing certification "has acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) has been used most frequently in class actions seeking injunctive relief. 7AA *Wright & Miller's Federal Practice & Procedure* § 1775 (3d ed. 2026). The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of

**MEMORANDUM DECISION AND ORDER – 4**

a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014) (citation modified). The party seeking class certification bears the burden of showing that Rule 23's requirements are met. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1115 (9th Cir. 2017).

### D.     Proceeding Under Pseudonym

Rule 10(a) of the Federal Rules of Civil Procedure provides that "the title of the complaint must name all the parties." Rule 17(a) likewise provides that "an action must be prosecuted in the name of the real party in interest." "The normal presumption in litigation is that the parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010).

The Ninth Circuit, however, has identified circumstances in which a court may permit a plaintiff to proceed using a pseudonym, including when: (1) "identification creates a risk of retaliatory physical or mental harm"; (2) "anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature,'" and (3) "the anonymous party is 'compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution.'" *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000) (citation modified) (first quoting *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993); then quoting *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)). Under those circumstances, the Court balances "the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party." *Id.* In cases where pseudonyms are used to shield against retaliation, the Court considers three factors: "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) and the anonymous party's vulnerability to such retaliation." *Id.* (citation modified).

**MEMORANDUM DECISION AND ORDER – 5**

### III.    ANALYSIS

**A.    Standing**

As an initial matter, County Prosecutor Defendants[1] (CP Defendants) argue the Court should deny Plaintiffs' motion for preliminary injunction because Plaintiffs lack standing to sue CP Defendants (Dkt. 39 at 2). CP Defendants claim that Plaintiffs have not shown injury in fact, traceability, or redressability (*id.* at 3, 5). As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing.

**1.    Injury in Fact**

Under the first prong, Plaintiffs must demonstrate that they have suffered, or will suffer, an injury that is "concrete and particularized" and "actual or imminent." *Townley*, 722 F.3d at 1133. The Supreme Court in *Driehaus* clarified that in the pre-enforcement context, the injury-in-fact prong is satisfied if Plaintiffs demonstrate: (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest"; (2) the conduct is "proscribed by a statute"; and (3) "there exists a credible threat of prosecution thereunder." 573 U.S. at 159. CP Defendants concede that the first two prongs are satisfied but claim Plaintiffs have not shown a substantial threat of future enforcement (Dkt. 39 at 3).

To establish the third *Driehaus* prong, Plaintiffs must show a threat of enforcement that is "credible," not "imaginary or speculative." *Driehaus*, 573 U.S. at 165 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In assessing a "credible threat of prosecution," the Court considers: (a) "whether the plaintiffs have articulated a concrete plan to violate the law in question"; (b) "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings"; and (c) "the history of past prosecution or enforcement

---

[1]    The County Prosecutor Defendants include all forty-four elected county prosecutors who have been named as Defendants (Dkt. 39 at 2 n.1; Dkt. 53).

under the challenged statute." *Unified Data Servs., L.L.C. v. FTC*, 39 F.4th 1200, 1210 (9th Cir. 2022). These three "factors must be considered as a whole, in light of the totality of the circumstances, and not as a mandatory checklist." *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1251 (S.D. Cal. 2024) (quoting *Teter v. Lopez*, 76 F.4th 938, 946 (9th Cir. 2023)). But when a pre-enforcement claim is brought before a statute takes effect, as here, "the history of past enforcement carries little, if any weight." *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022). In those situations, the Ninth Circuit has clarified that "either a general warning of enforcement or a failure to disavow enforcement is sufficient to establish a credible threat of prosecution in pre-enforcement challenge[s]." *Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024).

CP Defendants maintain that Plaintiffs have alleged "no facts showing any threatening action or statement of any county prosecutor" (Dkt. 39 at 3–4). The Ninth Circuit, however, takes a "broad view of this factor" and does not require "an explicit warning." *Isaacson v. Mayes*, 84 F.4th 1089, 1100 (9th Cir. 2023). Accordingly, "[t]he inquiry over whether a defendant poses a credible threat of enforcement 'often rises or falls with the enforcing authority's willingness to disavow enforcement.'" *Idaho Org. of Res. Councils v. Labrador*, 780 F. Supp. 3d 1013, 1035 (D. Idaho 2025) (quoting *Peace Ranch*, 93 F.4th at 490). Here, neither CP Defendants nor the Attorney General have disavowed H.B. 752's enforcement. While CP Defendants are correct that mere failure to disavow is not sufficient to establish standing, it is "strong evidence" of a "credible threat." *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021). Indeed, "Idaho is vigorously defending the constitutionality of [H.B. 752] and its broad coverage." *Matsumoto*, 122 F.4th at 798. For this reason, Plaintiffs have established a credible threat of prosecution, and the Court finds that Plaintiffs have satisfied the injury-in-fact prong.

**MEMORANDUM DECISION AND ORDER – 7**

###### 2.    Traceability

The second prong requires a showing of "a causal connection between the injury and the conduct complained of." *Townley*, 722 F.3d at 1133. "An injury is fairly traceable to a challenged action as long as the links in the proffered chain of causation are not hypothetical or tenuous and remain plausible." *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 943 (9th Cir. 2021). Here, the injury is a violation of Plaintiffs' Due Process Rights caused by H.B. 752's vague exceptions.

CP Defendants first argue that the named Plaintiffs, who are residents of Ada County, Bannock County, and Twin Falls County, have failed to allege any facts suggesting those county prosecutors have taken any action to make them "feel threatened" or that "will likely result in injury" (Dkt. 39 at 6). They further argue that the connection between Plaintiffs and the county prosecutors in counties where they do not reside is even more tenuous, noting that only "one Plaintiff vaguely alleges that the Plaintiff 'often travels for work or fun throughout Idaho'" (*id.*) (quoting Dkt. 1 ¶ 94). But, as Plaintiffs correctly note, the named Plaintiffs are not the only parties to this suit (Dkt. 45 at 6). "Plaintiffs seek to represent a broad putative class spread across the state" (*id.*).

Furthermore, the Court has previously rejected CP Defendants' arguments in *Idaho Org. of Res. Councils v. Labrador*, No. 25-cv-00178-AKB, 2026 WL 184522 (D. Idaho Jan. 23, 2026). There, the Court explained that "a Prosecuting Attorney Defendant in any county could conceivably prosecute any Individual Plaintiff who might happen to be traveling in the county." *Id.* at *6. That even one named Plaintiff "may travel outside their county of residence provides a causal link to the other counties in Idaho." *Id.* Moreover, CP Defendants admit that "their primary duties are to independently oversee prosecution of crimes committed within the boundaries of their respective counties" (Dkt. 39 at 5). Coupled with CP Defendants' failure to disavow and the

**MEMORANDUM DECISION AND ORDER – 8**

Court's provisional certification of a statewide class, the Court concludes that a causal link has been established for purposes of this stage of litigation.

### 3.    Redressability

To satisfy the last prong—redressability—Plaintiffs must demonstrate "the injury will likely be redressed by a favorable decision." *Townley*, 722 F.3d at 1133. "Government regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024).

CP Defendants argue that Plaintiffs cannot satisfy the redressability prong because "[a]n injunction against a prosecutor in, for example, Boundary County will not redress an injury that is alleged in southern Idaho" (Dkt. 39 at 7). CP Defendants misunderstand the required showing for redressability. "Where a state statute specifically grants enforcement powers to multiple government authorities, an injunction against the exercise of those powers by any one of those authorities suffices to establish redressability." *Matsumoto*, 122 F.4th at 801. H.B. 752 does not limit its enforcement to any single government authority. And as noted above, CP Defendants have a duty to oversee prosecution of crimes committed within their respective counties. The issue is not whether a prosecutor in Boundary County will redress an injury sustained in Cassia County. Rather, Plaintiffs need only demonstrate that a favorable decision in this Court will relieve them of "an injury," not "every injury." *Id.* at 801 (citing *Larson v. Valente*, 456 U.S. 228 (1982)). On this record, Plaintiffs have shown an injury to themselves that is likely to be redressed by a favorable decision.

Therefore, the Court concludes that Plaintiffs have standing to seek a preliminary injunction against CP Defendants.

## B.      Injunctive Relief

Plaintiffs seek a "narrow" preliminary injunction enjoining Defendants from enforcing H.B. 752 as applied to Plaintiffs' use of a restroom. They do not seek to enjoin H.B. 752 as it relates to changing rooms. Their narrow request seeks to enjoin H.B. 752 wherever: (1) the covered restroom designated for use by sex is a single-user facility; or (2) when a single-user restroom is not available because no-single user restroom exists on the same floor as the multi-user facilities or all single-user restrooms on the same floor as the multi-user facilities are occupied or not in service (Dkt. 3 at 3; Dkt. 3-1 at 10). They also seek a preliminary injunction enjoining enforcement of H.B. 752 as to all transgender individuals, regardless of whether the provisional class is certified (Dkt. 3 at 3–4).

### 1.      Likelihood of Success on the Merits

Turning first to the likelihood of success, Plaintiffs maintain that H.B. 752's enforcement against the named Plaintiffs and putative class members is unconstitutional under the Due Process Clause of the Fourteenth Amendment because it is void for vagueness, would violate Plaintiffs' right to equal protection, and would infringe upon their right to informational privacy (Dkt. 3 at 4). For purposes of injunctive relief, however, Plaintiffs acknowledge that a finding that H.B. 752 is vague obviates the Court's need to consider their other claims at this stage (Dkt. 56 at 19:3–5). Because the Court concludes Plaintiffs are likely to succeed on the merits of their assertion that H.B. 752 is unconstitutionally vague, it reserves for consideration whether Plaintiffs are likely to succeed on their equal protection and informational privacy claims.

H.B. 752 criminalizes the act of "knowingly and willfully enter[ing] a restroom or changing room in a government-owned building or a place of public accommodation . . . that is designated for use by the opposite biological sex." Idaho Code § 18-4117(1). The first offense is a misdemeanor punishable by jail not to exceed one year, and a second offense is a felony

punishable by up to five years' imprisonment. *Id.* The statute also contains ten exceptions allowing an individual to enter a restroom designated for the opposite sex, such as to render medical assistance or to perform custodial services. *See, e.g.*, *id.* § 18-4117(2). Two exceptions are relevant here. The first exception permits an individual to "use a single-user facility designated for the opposite sex, if such single-user facility is the only facility reasonably available at the time of the person's use of the facility." *Id.* § 18-4117(2)(e). The second permits a person to "use restroom facilities when the person is in dire need of urinating or defecating and such facility is the only facility reasonably available at the time of the person's use." *Id.* § 18-4117(2)(f).

A "basic principle of due process [is] that an enactment is void for vagueness if its prohibitions are not clearly defined." *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1019 (9th Cir. 2013). In a facial challenge, a statute can be void for vagueness for two independent reasons. First, it is void if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013) (quoting *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)). Second, it is void "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "Where a statute imposes criminal sanctions, as here, a more demanding standard of scrutiny applies." *Valle del Sol Inc.*, 732 F.3d at 1019 (citation modified).

Plaintiffs argue H.B. 752's reasonableness and dire need exceptions, as well as the phrase "*designated* for use by the opposite biological sex"[2] are unconstitutionally vague because H.B. 752 fails to provide Plaintiffs fair notice of when the provisions apply (Dkt. 3-1 at 17). Although the

---

[2]    Plaintiffs' complaint also alleges that H.B. 752 is unconstitutionally vague because it does not provide sufficient notice to the public of "which restroom would be considered to be the 'opposite biological sex' for a particular transgender individual" (Dkt. 1 ¶ 146). At this stage only, however, Plaintiffs assume that the State intended the term to mean a person's sex assigned at birth and thus do not challenge the phrase "biological sex" (Dkt. 3-1 at 11).

import of Plaintiffs' arguments are geared toward the fair notice prong of vagueness, the Court finds that H.B. 752 is unconstitutionally vague because it fails to provide sufficient standards for law enforcement.

Under the second prong, a criminal law is void for vagueness "if it lacks any ascertainable standard for inclusion and exclusion, thereby authorizing or encouraging the authorities to arbitrarily prosecute one class of persons instead of another." *Tucson v. City of Seattle*, 91 F.4th 1318, 1329 (9th Cir. 2024) (citation modified). The Supreme Court has recognized this prong as the "more important aspect of vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983). Without minimal guidelines to govern law enforcement, the "standardless sweep" of a statute "allows policemen, prosecutors, and juries to pursue their personal predilections." *Smith v. Goguen*, 415 U.S. 566, 575 (1974).

The Court first considers the phrase "reasonably available," which appears in both exceptions. Beyond requiring that availability be assessed "at the time of the person's use," § 18-4117(2)(f), the statute does not provide any objective criteria governing its application. The absence of such standards leaves law enforcement to determine, on a case-by-case basis, whether a particular restroom was "reasonably available" under the circumstances without guidance regarding what factors an officer should consider when making that determination. For example, H.B. 752 does not indicate whether availability turns on physical proximity, the presence of an unoccupied restroom on the same floor, the temporary occupancy of a restroom, the functionality of the restroom, or the location of other restrooms. Different officers could reasonably reach different conclusions regarding identical conduct, not because the facts differ, but because the statute furnishes no standards by which those facts are to be evaluated.

**MEMORANDUM DECISION AND ORDER – 12**

The same problem exists with respect to the "dire need" exception. H.B. 752 permits a person to use an otherwise prohibited restroom when the person is in "*dire need* of urinating or defecating" and the facility is the only one "*reasonably available*." § 18-4117(2)(f) (emphasis added). Yet the statute provides no guidance concerning what level of urgency qualifies as "dire." It does not identify any objective benchmark, specify what evidence may establish such a need, or explain how an officer is to assess whether the exception applies. Instead, enforcement largely depends on an officer's subjective assessment of an individual's physical condition at a particular moment.

Significant here is evidence from various Idaho law enforcement entities which opposed H.B. 752. Members of the Idaho Chiefs Police Association (ICOPA) and the Idaho Fraternal Order of Police (IFOP) both opposed H.B. 752 and expressed concerns with law enforcement's ability to enforce it (*see, e.g.*, Dkt. 3-3 at 32, 34) (submitting letters in opposition). For example, in a letter opposing H.B. 752, ICOPA stated:

> "[T]his proposal presents significant practical enforcement challenges for law enforcement offices in the field. . . . "[T]he bill includes exceptions that would be extremely difficult for officers to evaluate in real time. For example . . . **[i]t is unclear how an officer responding to a call would reasonably determine whether someone was truly in 'dire need,'** creating an unenforceable standard that places officers in a difficult position."

(*id.* at 32) (second emphasis added). Similarly, IFOP opposed the passage of H.B. 752 stating that "the way this language is worded, the way this bill is, it makes it difficult for us to enforce" (Dkt. 3-3 ¶ 19.b.).

Defendants retort that whether "officers will be unable to assess a person's dire need to urinate or defecate" has "nothing to do with vagueness" because "a regulation is not vague because it may at times be difficult to prove an incriminating fact but rather because it is unclear as to what fact must be proved" (Dkt. 40 at 18) (quoting *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S.

**MEMORANDUM DECISION AND ORDER – 13**

239, 253 (2012)). Interestingly, Defendants claim that "to the extent it is difficult to disprove a dire need to urinate or defecate beyond a reasonable doubt, all that means is the prohibition is less likely to be enforced" (Dkt. 40 at 18). This latter assertion, however, validates law enforcement's concerns that H.B. 752 will be arbitrarily enforced.

Regardless, Defendants argue that because H.B. 752 provides fair notice of the fact to be proved, i.e., whether a restroom is "reasonably available" or that a person has a "dire need of urinating or defecating," the statute is not vague merely because it is difficult for law enforcement to identify a violation (*id.*; Dkt. 56 at 24:24–25:1). In support, Defendants rely on *Fox*, although the principle underlying their argument stems from *Coates v. City of Cincinnati*, 402 U.S. 611 (1971). There, the Supreme Court examined whether an ordinance that prohibited conduct on public sidewalks that was "annoying to persons passing by" was unconstitutionally vague. *Id.* at 611–12. The Court first noted that the statute "did not indicate upon whose sensitivity a violation [depended]"—the sensitivity of the judge or jury, the arresting officer, or a hypothetical reasonable man. *Id.* at 613. Without an ascertainable standard of what conduct is "annoying," the Court held that the ordinance was vague, "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Id.* at 614.

The Supreme Court further clarified its reasoning in *United States v. Williams*, 553 U.S. 285 (2008). There, the Court found a federal statute criminalizing possession of child pornography was not vague, despite containing subjective intent elements. *Id.* at 306. The Court explained that "what renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* Although the statute required the defendant to hold subjective

MEMORANDUM DECISION AND ORDER – 14

beliefs that the material was child pornography, the Court found that "those are clear questions of fact." *Id.* "Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is 'annoying' or 'indecent.'" *Id.* The Court then noted that the statute in *Coates* was struck down because the criminal culpability was tied to whether the defendant's conduct was based on a "wholly subjective judgment[] without statutory definitions, narrowing context, or settled legal meanings." *Id.*

Applying those principles to this case, Plaintiffs are likely to succeed on the merits of their claim that the statute is unconstitutionally vague. Like the statute in *Coates*, H.B. 752's "reasonably available" and "dire need" exceptions subject individuals to an unascertainable standard because the statute does not indicate upon whose sensitivity a violation depends. Furthermore, the incriminating fact is indeterminate, i.e., what constitutes "reasonably available" and "dire need." As noted above, H.B. 752 fails to limit the scope of when a restroom is "reasonably available."

In response, Defendants argue that terms such as "reasonable" are commonplace throughout the law and that courts routinely apply similar standards (Dkt. 40 at 16). That observation is undoubtedly true. But a vagueness analysis does not occur in the abstract. The Court must examine the specific statutory language at issue and determine whether it provides "a person of ordinary intelligence fair notice of what is prohibited." *Fox*, 567 U.S. at 254 (quoting *Williams*, 553 U.S. at 304). Here, H.B. 752 imposes criminal penalties—up to a felony for repeat violations—yet leaves critical enforcement decisions to the unguided discretion of individual officers. *See Reno v. ACLU*, 521 U.S. 844, 871 (1997) (finding the vagueness of a criminal statute implicated special concerns). Without statutory definitions, narrowing context, or settled legal meanings, H.B. 752 invites arbitrary and discriminatory enforcement.

**MEMORANDUM DECISION AND ORDER – 15**

Another issue of enforceability is a law enforcement officer's ability to determine an individual's "biological sex." As a representative of the ICOPA testified before the legislature, "House Bill 752 would place an unrealistic and absurd burden on Idaho law enforcement officers to somehow know or be able to readily identify visually the biological sex of another human being" (Dkt. 3-3 ¶ 19a.). Defendants responded to this issue during oral argument that law enforcement could use DNA testing to prove biological sex (Dkt. 56 at 26:3–5). Absent consent or a warrant authorizing DNA collection, however, law enforcement cannot collect DNA for testing unless the individual is convicted of certain crimes. *See* § 19-5506(2). Plaintiffs also note that DNA collection implicates privacy interests (Dkt. 56 at 47:23–48:2). Whether those concerns ultimately prove well-founded is not the question presently before the Court. Rather, the issue is whether the statute invites arbitrary and discriminatory enforcement. On the current record, Plaintiffs have shown that it does.

The Supreme Court has repeatedly emphasized that the vagueness doctrine guards against laws that permit enforcement based on "personal predilections" rather than objective standards. *Smith*, 415 U.S. at 575. Likewise, the Ninth Circuit has explained that a law is constitutionally deficient when it lacks ascertainable standards for inclusion and exclusion and thereby authorizes arbitrary enforcement. *Tucson*, 91 F.4th at 1329. On the present record, Plaintiffs have demonstrated a likelihood of establishing that H.B. 752's "reasonably available" and "dire need" exceptions fail to provide the minimal guidelines necessary to constrain official discretion.

Plaintiffs further argue that H.B. 752 is vague because it does not define "designated." This argument is a challenge under the first prong of the void for vagueness doctrine that the statute does not provide fair notice of proscribed conduct. Having found H.B. 752's "reasonably available" and "dire need" exceptions to be vague, the Court does not need to consider whether

**MEMORANDUM DECISION AND ORDER – 16**

Plaintiffs are likely to succeed on their argument that the phrase "*designated* for use by the opposite biological sex" in the statute's central prohibition is also vague. The Court makes the following observations, however. First, unlike S.B. 1100[3] and H.B. 264,[4] H.B. 752 does not require any establishment to designate restrooms for use by a biological sex. Second, signage for men and women does not necessarily mean the establishment intends to limit its restrooms' use to biological sex. As Plaintiffs note, they have been entering restrooms with signage for the opposite biological sex for years. The mere passage of H.B. 752 does not mean that those same restrooms are now "designated" by the establishment only for the opposite biological sex.

Further, Defendants suggest that Plaintiffs could inquire of an establishment's proprietor about the meaning of restroom signage (Dkt. 40 at 14) (arguing people "could simply ask the proprietor who the intended users of the bathrooms are"). This suggestion, however, is an implicit admission that H.B. 752 does not give adequate notice of the proscribed conduct, namely which

---

[3]      S.B. 1100, codified at Idaho Code §§ 33-6701–07 (effective July 1, 2024), requires public schools (K–12) to *designate* restrooms and changing facilities for use by male or females only and may be used only by members of that sex. I.C. § 33-6703(1)(a)-(b). In *Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025), the Ninth Circuit affirmed the district court's denial of SAGA's preliminary injunction motion. Applying intermediate scrutiny to plaintiffs' equal protection claim, the Ninth Circuit ruled that S.B. 1100's mandatory segregation in "locker rooms and communal shower rooms that lack curtains or stalls" is substantially related to the State's interest in protecting students' privacy in their unclothed bodies. *Id.* at 925.

[4]      H.B. 264, codified at Idaho Code §§ 67-9801–06, requires correctional facilities, domestic violence shelters, juvenile correction centers, and state education institutions to "*designate* each multi-occupancy restroom, changing room, and sleeping quarters for the exclusive use of either females or males" and no individual shall enter such room unless "such individual is a member of that sex." I.C. § 67-9801(3) (emphasis added; defining "covered entity"); § 67-9802(1) (requiring room designation), (2) (proscribing access). Two university students challenged H.B. 264 as unconstitutional under the Equal Protection Clause and in violation of Title VII and Title IX in *Jones v. Critchfield*, 803 F. Supp. 3d 1078 (D. Idaho 2025). The Honorable Judge Nye denied their motion for preliminary injunction, ruling that privacy was a persuasive justification for the law under intermediate scrutiny. *Id.* at 1091. He reasoned that "separating restrooms by biological sex to reflect such privacy goals has been common for centuries." *Id.*

MEMORANDUM DECISION AND ORDER – 17

restroom Plaintiffs are prohibited from entering. Moreover, the Court has concerns about whether an establishment's proprietor has the authority to allow a person to use a restroom designated for the opposite sex, given that H.B. 752 is a criminal statute that does not contain an exception for consent.

In sum, H.B. 752 does not provide sufficient standards to prevent arbitrary enforcement. Therefore, Plaintiffs have shown a likelihood of success on the merits of their claim that the law is void for vagueness. In the interest of quickly issuing a decision on Plaintiffs' preliminary injunction motion, the Court does not address the remaining issues and reserves for consideration Plaintiffs' equal protection and informational privacy claims.

### 2.      Irreparable Harm

Although Plaintiffs have shown some likelihood of success on the merits regarding their void-for-vagueness claim, Plaintiffs must still make a clear showing that irreparable harm is likely absent preliminary relief. *Winter*, 555 U.S. at 22, 24; *Lopez*, 680 F.3d at 1072. Plaintiffs contend that, absent an injunction, they will suffer irreparable harm to their constitutional rights to equal treatment and their health and well-being (Dkt. 3 at 4).

"It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation modified). Having concluded that Plaintiffs are likely to succeed on the merits of their vagueness claim, the Court finds irreparable harm will likely occur in the absence of preliminary relief. Therefore, this factor weighs in favor of relief.

### 3.      Balance of Equities and Public Interest

"The 'balance of equities' concerns the burdens or hardships to a plaintiff compared with the burden on the defendant if an injunction is ordered. The 'public interest' mostly concerns the injunction's impact on nonparties rather than parties." *Porretti v. Dzurenda*, 11 F.4th 1037, 1050

MEMORANDUM DECISION AND ORDER – 18

(9th Cir. 2021) (citation modified). "Where the government is a party to a case in which a preliminary injunction is sought, the balance of the equities and public interest factors merge." *Roman v. Wolf*, 977 F.3d 935, 940–41 (9th Cir. 2020).

As discussed above, Plaintiffs have demonstrated a likelihood of success in their void-for-vagueness claim. In the Ninth Circuit, "the deprivation of constitutional rights unquestionably constitutes irreparable injury," *Melendres*, 695 F.3d at 1002, because "constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Am. Trucking Ass'ns, Inc., v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009).

Defendants argue that the equities and public interest tip in their favor because "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury" (Dkt. 40 at 33) (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). While the Court recognizes that the public has an interest in having duly-enacted laws enforced, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.

Defendants further argue that the State has a valid interest in promoting bodily privacy and protecting women and children in public restrooms from those who may seek to do harm (Dkt. 40 at 23–25). The Court does not question the inherent privacy interest implicated by restroom use nor Idaho's interest in protecting the public from wrongdoers. *See Hecox v. Little*, 79 F.4th 1009, 1025 (9th Cir. 2023), *opinion withdrawn*, 99 F.4th 1127 (9th Cir. 2024) (noting "bathrooms by their very nature implicate important privacy interests"). But Idaho may protect those interests without infringing upon Plaintiffs' constitutional rights. *See NetChoice, L.L.C. v. Bonta*, 152 F.4th 1002, 1025 (9th Cir. 2025) (finding public interest factor favored plaintiff where state could pursue their interest in protecting minors "in less intrusive ways"). As Plaintiffs note, "any actual safety

concerns posed by a person entering a restroom 'designated for the opposite biological sex' are addressed by Idaho's existing laws" (Dkt. 3-1 at 24); s*ee, e.g.*, Idaho Code § 18-901 (assault); § 18-903 (battery); § 18-905 (aggravated assault); § 18-907 (aggravated battery); § 18-924 (sexual battery); § 18-6101 (rape); § 18-7902 (malicious harassment); § 18-4116 (indecent exposure); § 18-7008 (criminal trespass); § 18-6409 (disturbing the peace). As a representative of ICOFPA stated, "Idaho Code 18-7008 currently gives private citizens and Idaho law enforcement the means in which to address and remedy an individual's unwanted and disruptive presence on public or private property." (Dkt. 3-3 ¶ 19; *see also* Dkt. 3 at 33 n.4) (IFOP letter stating that "Idaho law already provides tools to address inappropriate and disruptive behavior in restrooms or changing areas through existing statutes such as trespass or other criminal offenses.").

Furthermore, the Court is not presently convinced that H.B. 752 furthers Idaho's safety interest. Although Defendants maintain that H.B. 752 was enacted in response to safety risks and incidents that have occurred in Idaho (Dkt. 40 at 25), Plaintiffs argue that of those incidents, only one incident, from over ten years ago, involved a transgender person, who was ultimately prosecuted under existing Idaho law (Dkt. 46 at 18 n.10). One incident from over ten years ago is not sufficient to demonstrate that H.B. 752 materially advances Idaho's asserted interest in protecting restroom users from harm, particularly where the conduct at issue was already prohibited by existing criminal statutes and prosecuted accordingly. *See also Jones v. Critchfield*, 803 F. Supp. 3d 1078, 1091 (D. Idaho 2025) (noting "no indication" "a female has been attacked by a transgender man in a women's restroom" in Idaho and finding argument for safety to be "minimally persuasive"). Based on the current record, the Court finds the balance of equities and public interest weighs in favor of Plaintiffs.

In summary, the Court concludes Plaintiffs have made a clear showing that H.B. 752 is unconstitutionally vague and that its enforcement would cause irreparable harm. Additionally, Plaintiffs have shown that the balance of equities and public interest favor the imposition of a preliminary injunction. Accordingly, the Court grants Plaintiffs' request for injunctive relief.

### 4.     Severability

Having determined that Plaintiffs are likely to succeed on the merits of their void-for-vagueness challenge to subsections (e) and (f), the Court must now determine those provisions' effect on the remainder of H.B. 752. The Attorney General argues that even if the two exceptions suffer from a constitutional defect, the remedy is to invalidate the defective portion—not invalidate the entire statute (Dkt. 40 at 15).

The presumption of severability provides that when a portion of a statute suffers from a constitutional defect, "[t]he Court presumes that an unconstitutional provision in a law is severable from the remainder of the law or statute." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625 (2020). Under principles of federalism, "a federal court should not extend its invalidation of a [state] statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985). In applying the presumption of severability, the Court "must follow the approach the Idaho Supreme Court would take to the severability question." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 935 (9th Cir. 2004). Under Idaho law, "[i]f an unconstitutional portion of a statute or ordinance is integral or indispensable, it is not severable, and the entire measure must fall." *Boundary Backpackers v. Boundary County*, 913 P.2d 1141, 1148 (Idaho 1996). The determination of whether the offending language is "integral or indispensable to the operation of the statute as the legislature intended" turns on "the intention of the legislature." *State v. Nielsen*, 960 P.2d 177, 180 (Idaho 1998) (applying severability doctrine to a criminal statute).

MEMORANDUM DECISION AND ORDER – 21

Plaintiffs argue that because the exceptions at issue are key to defining the scope of conduct being criminalized, striking them while allowing the prohibition to remain "plainly ignores the intent of the Idaho Legislature—and would allow, and indeed require, prosecutors to impose criminal consequences where the Legislature did not intend them to exist" (Dkt. 46 at 10). The Court agrees that the exceptions are integral to H.B. 752 because they are key to limiting the scope of criminalized conduct. Invalidating the two exceptions would defeat the Idaho Legislature's intended purpose to allow a person to enter a restroom designated for use by the opposite sex under certain circumstances. Therefore, the Court holds that the reasonably available and dire need exceptions cannot be severed from H.B. 752.

## C.   Class Certification

Having held that the named Plaintiffs are entitled to injunctive relief, the Court considers Plaintiffs' request to provide injunctive relief on a class-wide basis (Dkt. 4). Plaintiffs seek a Rule 23(b)(2) class certification action of "all transgender people who seek to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity" (Dkt. 4-1 at 8).

To certify a Rule 23(b)(2) class, Plaintiffs must show that the Rule 23(a) prerequisites— numerosity, commonality, typicality, and adequacy—are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the parties seeking class certification, Plaintiffs bear the burden of showing that the Rule 23 requirements are met. *See Just Film, Inc.*, 847 F.3d at 1115.

Here, Defendants do not contest Plaintiffs' allegations of numerosity, adequacy of counsel, or fulfillment of Rule 23(b)(2) (Dkt. 41; Dkt. 48 at 3 n.1). Thus, the Court focuses on the disputed prerequisites: commonality, typicality, and adequacy of Plaintiffs as representative parties.

**MEMORANDUM DECISION AND ORDER – 22**

### 1.    Commonality

The commonality requirement is satisfied if there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this prong, Plaintiffs must demonstrate that they and the proposed class members have suffered the same injury and have claims that depend on a common contention capable of class-wide resolution. *Dukes*, 564 U.S. at 349–50. The commonality element may be fulfilled if the court can determine "in one stroke" whether a single policy or practice which the proposed class members are all subject to "expose[s] them to a substantial risk of harm." *Parsons*, 754 F.3d at 678. "These policies and practices are the 'glue' that holds together the putative class . . . ; either each of the policies and practices is unlawful as to every [proposed member] or it is not." *Id.*; *see also B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 969 (9th Cir. 2019). In other words, "Rule 23's commonality requirement can be satisfied in a statutory case by a common risk of a future violation that flows from the same state-wide policy or practice." *Tinsley*, 922 F.3d at 976. In that situation, the relevant question for commonality is whether every putative class member is subject to the same unlawful state-wide policy or practice. *Id.* at 976–77.

Defendants argue commonality does not exist because Plaintiffs' proposed class is extraordinarily diverse and undefined, as it includes transgender persons of varying ages and degrees of social identities (Dkt. 41 at 4–6). According to Defendants, there can be "no commonality between Plaintiffs and those whose gender identity aligns with one or more of the other 72 gender identities" (*id.* at 6). Defendants also point to the differences in age and the extent of medical treatment between the named Plaintiffs and putative class members as evidence that the named Plaintiffs' alleged harms and injuries are not the same as proposed class members (Dkt. 41 at 6). But Plaintiffs need not show that every class member shares the same attributes or suffered

the same injury. Rather, commonality is satisfied if every class member "suffers exactly the same constitutional injury" when they are exposed to a single statewide policy that creates a substantial risk of harm. *See Parsons*, 754 F.3d at 678.

Based on the nature of Plaintiffs' Due Process claims, the Court finds that commonality exists because, as Defendants concede, "all putative class members may be affected by the same law" (Dkt. 41 at 7). Like the plaintiffs in *Tinsley* and *Parsons*, every transgender person who seeks to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity will be exposed, as a result of H.B. 752's unconstitutionally vague exceptions, to a risk of serious future harm, i.e., criminal conviction and incarceration (*see* Dkt. 3-2 ⁋ 53) ("The threat of arrest or prosecution creates a persistent state of vigilance and fear, which is associated with increased anxiety, avoidance behavior, and impaired daily functioning."). This risk of harm is true for all members of the class. By its terms, the proposed class is limited to "all transgender people who seek to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity" (Dkt. 4-1 at 8). Each member therefore risks suffering "exactly the same constitutional injury." *Tinsley*, 922 F.3d at 969. Thus, as in *Tinsley* and *Parsons*, the constitutionality of H.B. 752 is the "glue" that holds the class together.

Furthermore, Plaintiffs and putative class members share a common contention—whether H.B. 752 is unconstitutionally vague because it fails to provide fair notice about what conduct is prohibited and invites arbitrary and discriminatory enforcement. The Court finds that the contention is capable of class-wide resolution because a determination that H.B. 752 is vague "resolve[s] an issue that is central to the validity of [Plaintiffs' vagueness challenge] in one stroke." *See Dukes*, 564 U.S. at 350. Therefore, the commonality requirement is satisfied.

MEMORANDUM DECISION AND ORDER – 24

### 2.    Typicality

The next prong—typicality—requires Plaintiffs to demonstrate that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is a "permissive standard[]" that "refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Parsons*, 754 F.3d at 685. "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338).

Because of their similarities, "Rule 23(a)'s commonality and typicality requirements occasionally merge." *Id.* Where the cause of the injury is the same, "the typicality inquiry involves comparing the injury asserted in the claims raised by the named plaintiffs with those of the rest of the class." *Id.* The Ninth Circuit has reiterated that the Court need "not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Id.* (quoting *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001)).

The Court rejects Defendants' contention that the named Plaintiffs' claims and alleged injuries are not typical of other putative class members merely because the degree of injury between them is not identical (Dkt. 41 at 8). As discussed above, the named Plaintiffs and each proposed class member are all subject to the same statutory scheme and face the same alleged constitutional injury. Accordingly, the Court finds that Plaintiffs have satisfied the typicality requirement.

### 3.    Adequacy

Finally, Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine whether Plaintiffs will adequately represent a class, the Court must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. Defendants do not question whether the named Plaintiffs nor their counsel will prosecute the action vigorously on behalf of the class. Rather, they argue adequacy is not satisfied because Plaintiffs have not demonstrated the absence of a conflict of interest with other proposed members of the class (Dkt. 41 at 10).

The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015) (quoting 1 William B. Rubenstein et al., *Newberg on Class Actions* § 3.58 (5th ed. 2011)). "A conflict is fundamental when it goes to the specific issues in controversy." *Id.* (quoting Rubenstein, *supra*, § 3.58). "However, the mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *Berrien v. New Raintree Resorts Int'l, L.L.C.*, 276 F.R.D. 355, 359 (N.D. Cal. 2011) (collecting cases).

Defendants argue, without citing to any authority, that Plaintiffs' assumption that "every transgender person (however defined) will want to use multi-occupancy restrooms designated for members of the opposite sex and that every transgender person wants members of the opposite sex

to be able access the restroom that they use" creates a risk of conflict that "is too great" (Dkt. 41 at 9–10). Indeed, the only authority Defendants provide is *Dukes*, in which the Court found it unnecessary to discuss the adequacy requirement after denying certification on different grounds. 564 U.S. at 349 n.5.

The Court finds that, at this preliminary stage, neither the named Plaintiffs nor their counsel have any conflicts with the proposed class members that frustrate adequacy. As Plaintiffs note, "[t]he interest in protecting one's access to their chosen restroom is shared by the class members" (Dkt. 48 at 6). Defendants' hypothetical contentions are not sufficient to defeat class certifications. Accordingly, the Court concludes that the named representatives can fairly and adequately protect the interests of the class.

### 4.      Provisional Certification under Rule 23(b)(2)

A class action may be maintained if Rule 23(a) is satisfied and if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

Plaintiffs' proposed class satisfies Rule 23(b)(2) because Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole" (Dkt. 4-1 at 9) (quoting Fed. R. Civ. P. 23(b)(2)). Because each proposed class representative faces the risk of arrest and prosecution under H.B. 752, requirements of Rule 23(b)(2) "are unquestionably satisfied" as "members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons*, 754 F.3d at 688. This relief is precisely the type that Rule 23(b)(2) is designed to grant. Accordingly, Plaintiffs'

proposed class of all current and future transgender people who seek to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity is provisionally certified.

### D.     Motion to Proceed Under Pseudonym

Plaintiffs Daniel Doe and Peter Poe also seek an Order permitting them to proceed under pseudonym (Dkt. 5 at 3). Their request to proceed under pseudonym meets at least two of the situations envisioned by the Ninth Circuit. *See Advanced Textile Corp.*, 214 F.3d at 1068. First, disclosure of Plaintiffs' identities would compel them to reveal information that they contend could expose them to criminal prosecution (Dkt. 5-1 at 8–9). Second, identification in the public record may create a risk of stigma, retaliation, and disclosure of highly sensitive medical information (*id.* at 9). For those reasons, the Court will allow Plaintiffs Doe and Poe's identities to remain anonymous for purposes of the public record in this case.

Defendants' stated concern is narrower. They do not oppose pseudonymity on the public docket at this stage but contend that disclosure to defense counsel may later be necessary to test Plaintiffs' allegations (Dkt. 42 at 3). The Court agrees that this issue, if it arises, can be addressed in the context of discovery. The better course is not to deny pseudonymity now but to allow the parties to meet and confer regarding any later disclosure that may become necessary and the protections that should govern such disclosure. Accordingly, the Court allows Plaintiffs' Doe and Poe to remain anonymous during the preliminary injunction stage.

### IV.     ORDER

**IT IS HEREBY ORDERED** that:

1.     Plaintiffs' Motion for Preliminary Injunction and Provisional Class Certification (Dkt. 3) is **GRANTED**.

MEMORANDUM DECISION AND ORDER – 28

    a.      The Court enjoins enforcement of H.B. 752 as against all transgender people who seek to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity wherever: (1) the covered restroom designated for use by sex is a single-user facility; or (2) when a single-user restroom is not available because no-single user restroom exists on the same floor as the multi-user facilities or all single-user restrooms on the same floor as the multi-user facilities are occupied or not in service.

    b.      The bond requirement imposed by Federal Rule of Civil Procedure 65(c) is **WAIVED**.

2.      Plaintiffs' Motion for Class Certification (Dkt. 4) is **GRANTED**.

    a.      The Court certifies the proposed class of all transgender people who seek to use a restroom in a government-owned building or place of public accommodation in Idaho consistent with their gender identity.

    b.      The Court enjoins enforcement of H.B. 752 as against the class while this lawsuit is pending.

    c.      The Court appoints counsel for the named Plaintiffs as counsel for the class.

3.      Plaintiffs Daniel Doe and Peter Poe's Motion for Leave to Proceed Under Pseudonym (Dkt. 5) is **GRANTED**.

    a.      All public filings will proceed anonymously by using the pseudonyms reflected in this ORDER, and all filings will be under seal to the extent they reveal the identity of Plaintiffs Daniel Doe and Peter Poe.

    b.      Defendants and their legal counsel are prohibited from disclosing to any third party the names of Plaintiffs Daniel Doe and Peter Poe without express

permission from Plaintiffs in writing, provided through their counsel. This Order does not prohibit Defendants from consulting their legal counsel concerning the allegations of the Complaint or the identities of Plaintiffs.

c.      Plaintiffs and Defendants may enter into a protective order that adds additional safeguards to this order.

DATED: June 16, 2026

Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER – 30